### In re DIAMOND STAR TIMBER CORPORATION.

No. 33721.

District Court, N. D. New York.

Jan. 12, 1946.

850

McGowan & Stolz, of Syracuse, N. Y. (Max L. Stolz, of Syracuse, N. Y., of counsel), for creditor, Sylvia Bussell.

Allen L. Gurley, of Potsdam, N. Y., for petitioning creditors.

BRENNAN, District Judge.

On November 16, 1945, an involuntary petition in bankruptcy was filed in this Court praying that the Diamond Star Timber Corporation be adjudicated a bankrupt. The corporation defaulted in pleading and was adjudged a bankrupt on December 7, 1945.

By notice of motion dated December 5, 1945, Sylvia Bussell of Brooklyn, New York, a creditor of the bankrupt, moves to dismiss the petition in bankruptcy herein upon the ground that the domicile or principal place of business of the bankrupt was not located within the confines of the Northern District of New York, and that, therefore, this Court had no jurisdiction to entertain the petition or make the order of adjudication. Bankruptcy Act, § 2, sub. a (1), 11 U.S.C.A. § 11, sub. a(1). The motion came on to be heard on Dec. 17, 1945, the petitioning creditors appearing by their attorney and opposing the motion.

The question involved is concise. The moving party claims that the bankrupt neither had its principal place of business nor its domicile within the Northern District of New York for the six months preceding the filing of the involuntary petition, but in fact the corporation had its principal place of business and domicile at the City of New York, within the Southern District of New York.

The right of the creditor to make this motion is challenged by reason of the change made in Sec. 18, sub. b of the Bankruptcy Act by the Amendment of 1938, 11 U.S.C.A. § 41, sub. b. In re Carden, 2 Cir., 118 F.2d 677.

The authorities are not in agreement as to whether the requirements of Sec. 18, sub. b are jurisdictional or relate to venue. Collier on Bankruptcy, 14th Ed. Vol. 1, 171, etc. The Court of Appeals for the Second Circuit has held, however, that same are jurisdictional. In re Federman, 2 Cir., 119 F.2d 754.

The broad powers of the Court in the matter of the entertainment of the motion is expressed in the following quotation:

"And it has long been the practice of bankruptcy courts to permit creditors or others not entitled to file pleadings or otherwise contest the allegations of a petition, to move for the vacation of an adjudication or the dismissal of a petition on grounds, whether strictly jurisdictional or not, that the proceeding ought not to be allowed to proceed." Security & Exchange Commission v. U. S. Realty and Improvement Co., 310 U.S. 434, 457–458, 60 S.Ct. 1044, 1054, 84 L.Ed. 1293.

The motion is, therefore, entertained.

A brief resume of the facts follows. The bankrupt was incorporated pursuant to the provisions of the Stock Corporation Law of the State of New York, by certificate filed in the Office of the Department of State on November 7, 1941. The principal purposes for which it was formed were to carry on a general lumber, tanning and milling business; to hold timber lands, to buy, cut, sell and ship timber, lumber and kindred products, to own and operate mills and equipment necessary for the handling of logs and timber, to borrow money for use in the business of the company, and to do all things necessary or proper to carry out the purposes detailed in the certificate.

The certificate also contains a provision in the paragraph which designates the Secretary of State as the agent of the corporation upon whom process may be served that " * * * that the office of the corporation shall be located in the City of New York, * * *." Meetings of stockholders and directors may be held at any place within or without the State of New York.

The nature and extent of the bankrupt's business operations do not appear until August 31, 1943, when the City Financial Corporation entered into an agreement with the bankrupt to finance its business. Thereafter, it loaned to the corporation over $700,000, the major portion of which was secured by accounts receivable assigned by the bankrupt to the City Financial Corporation. These transactions were consummated at the City of New York at the office of the bankrupt which consisted of a three-room suite, occupied by the president and two employees. The bankrupt maintained its bank accounts at financial institutions located at New York City. At least two chattel mortgages covering equipment were executed by the bankrupt at the City of New York.

Sometime prior to the 18th day of September, 1944, the bankrupt owned and operated a lumber mill at Brasher Falls, New York, which is within the Northern District of New York. Just when this property came into the possession or under the control of the bankrupt does not appear, but the affidavit of Mr. Chambers shows his continuous employment by the bankrupt at the above place from September 18, 1944, to September 29, 1945. The property consists of approximately five acres of land, the saw mill equipment located in a building thereon, described as a mill, and another building upon the same premises which has been designated as an office and upon which the painted sign of the bankrupt appears. The mill was used in lumber manufacturing operations and was in actual operation for three or four months prior to September, 1944. It is inferred that standing timber was purchased by the bankrupt; was cut, removed to the mill, sawed into lumber and shipped. The actual amount of lumber processed is in dispute, but the most reliable evidence from the acting manager at the mill is that there was manufactured upwards of one-half million board feet.

The number of employees at the mill does not appear, with certainty, but it is evident from the operations described in the affidavits that there were a number of such employees.

On October 8, 1945, a visit was made by Mr. Chambers to the New York office which he described as consisting of three small rooms containing three or four desks and some filing cabinets. No business was being transacted, although there appeared to be two young ladies employed therein who advised him that they had no work to do.

In the late summer of 1945 the City Financial Corporation assigned its outstanding account against the bankrupt to the moving party, Sylvia Bussell, a stenographer employed in a law office at New York City. On October 12, 1945, she instituted an action in the Supreme Court of St. Lawrence County against the bankrupt to recover approximately $135,000, and obtained a warrant of attachment in said action from a Justice of Supreme Court at Schenectady, New York. This attachment was directed against the property located at Brasher Falls, New York. The bankrupt defaulted in this action. Judgment for the amount demanded was entered, and the Sheriff of St. Lawrence County took into his possession many items of personal property belonging to the bankrupt which he thereafter sold on December 5, 1945, realizing the sum of $3,186.30, which he now holds, subject to an agreement made by the attorneys representing the plaintiff and attorney for the petitioning creditors herein.

In December, 1944, the Bankrupt gave to the City Financial Corporation a chattel mortgage as security for an indebtedness of $2400, covering a motor truck located at Brasher Falls, New York. On April 21, 1944, the bankrupt executed a chattel mortgage to the City Financial Corporation to secure the sum of $4,000, which mortgage covered certain equipment located at its property at Brasher Falls, New York, and which was satisfied January 22, 1945. Both of said mortgages were filed in the Clerk's Office of the Town of Brasher in which the Village of Brasher Falls is located.

The question to be determined on this motion is whether the requirements of Section 2, sub. a(1), of the Bankruptcy Act exist to justify this Court in proceeding to administer the assets of the bankrupt.

■ The determination of the location of the principal place of business of a corporation is a question of fact. In Re Hudson River Nav. Corp., 2 Cir., 59 F.2d 971. Both the moving party and the petitioning creditors have cited a great many cases which they urge bear out their respective contentions. It is claimed by the moving party that the principal place of business of the bankrupt is in the City of New York, while the petitioning creditors claim that

it is located at Brasher Falls, New York. The moving party bases her contention principally upon the fact that the certificate of incorporation designates the office of the bankrupt at the City of New York, and that its stockholders and directors reside there. She further claims that the business transactions with her assignor show that the New York City office was in fact the principal office of the bankrupt. It might be noted here that it developed that the accounts receivable pledged by the bankrupt as security for the loans made by the City Financial Corporation proved to be fictitious.

The petitioning creditors contend that the certificate of incorporation shows that the purpose for which the corporation existed was to carry on lumber operations; that financing was an auxiliary purpose; that the whole record is devoid of any evidence that such operations were carried on or controlled at the New York City office in any manner; that the bankrupt's business was carried on entirely at Brasher Falls and only at that place ; that obligations were incurred there; the assets of the corporation were located there, and they urge that the obtaining of credit or money upon the basis of fictitious accounts receivable and the occupancy of three small rooms at the City of New York can hardly be termed as transacting the principal purpose of the corporation; to wit, the carrying on of lumbering operations. The petitioning creditors also urge that the moving party herself, having brought a civil action in the County of St. Lawrence, can not be assumed to have brought the action in an improper county and that by her act she has recognized that the principal place of business of the corporation was at Brasher Falls, New York. New York Civil Practice Act, § 184-a. They urge also that the filing of the chattel mortgages by the assignor of the moving party in the Town Clerk's Office of the Town of Brasher is a further recognition of the fact that its principal office is located there. New York Lien Law, Consol. Laws, c. 33, § 232.

They further urge that since the Bankruptcy Act was designed to provide for the equitable distribution of assets of an insolvent debtor among its creditors, all equitable considerations are in favor of the denial of this motion, inasmuch as, if the motion be granted; the proceeds of the sale of the personal property now in the possession of the Sheriff of St. Lawrence County will be required to be paid to the moving party.

A discussion of the legal precedents which are applicable here would extend this decision beyond any necessary length. It can be stated that in determining the location of the principal office of a corporation the Court should take into consideration the designation of that office in the certificate of incorporation; the actual location of the places where the business of the corporation is in fact conducted; the nature and extent of the business transacted thereat; the purpose for which the corporation was organized; the location of its assets, and their character as related to the purpose for which the corporation was founded.

"And the principal place of business is where the actual business of the corporation is conducted or transacted. It is a question of fact to be determined in each particular case by taking into consideration such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." Colorado Interstate Gas Co. v. Federal Power Com'n., 10 Cir., 142 F.2d 943, at page 951.

Consideration has been given to the evidence as it relates to the facts to be determined, and the conclusion is reached that the requirements of Section 2, sub. a (1), of the Bankruptcy Act have been shown by the petitioning creditors to exist herein.

The motion is, therefore, denied.