Jack R. KELLY, Appellant,

v.

UNITED STATES STEEL CORPORATION and The Thew Shovel Company, a corporation,

Homer L. JOHNSTON, Appellant,

v.

UNITED STATES STEEL CORPORATION and The Thew Shovel Company, a corporation.

Rose Marie EGAN, and George W. Egan and Teresa Egan, her parents, Appellants,

v.

UNITED STATES STEEL CORPORATION.

Andrew J. TURNER, Sr., Appellant,

v.

UNITED STATES STEEL CORPORATION.

Mary McKISSOCK, Appellant,

v.

UNITED STATES STEEL CORPORATION.

Nos. 13221, 13222, 13229, 13239, 13247.

United States Court of Appeals Third Circuit.

Argued Nov. 18, 1960.

Decided Dec. 9, 1960.

See also 170 F.Supp. 649.

John E. Evans, Jr., Pittsburgh, Pa., (Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellants Kelly and Johnston.

Donald J. Lee and Wilner, Wilner & Kuhn, Pittsburgh, Pa., on the brief, for appellants Egan and others.

Edward J. Balzarini and Suto, Power, Goldstein & Walsh, Pittsburgh, Pa., on the brief, for appellant Turner.

Samuel R. Sciullo, Pittsburgh, Pa., on the brief, for appellant McKissock.

Carl E. Glock, Pittsburgh, Pa. (Ira R. Hill, William T. Marsh, Reed, Smith, Shaw & McClay, Robert E. Wayman, Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., on the brief), for United States Steel Corporation, Appellee.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

These are appeals from a series of decisions [1] in the United States District Court for the Western District of Pennsylvania in which judgment has been entered for the defendant. The appeals all raise the same question. That question is whether the United States Steel Corporation has its principal place of business in Pennsylvania. If it has, the

---

1. The five cases consolidated for this appeal were similarly consolidated for decision on the point here in issue before the trial judge. The cases were jointly decided and separate orders of dismissal were entered for each case.

decision of the court below is correct since all these appellants are Pennsylvania citizens and there is, consequently, no diversity of citizenship on which to base the jurisdiction of a federal court.

The question arises under the 1958 statute, § 1332(c) of Title 28. That section states:

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

The new provision is, as appears in its legislative history, an effort to reduce the number of cases coming to federal courts on the ground of diversity of citizenship only.[2]

During the argument in this Court the statement was made that the location of the corporation's principal place of business is a question of fact. To a certain extent this is true because facts about an individual corporation have a great deal to do in determining whether that corporation has its principal place of business in a given state. But what facts are significant and determinative in this matter depends upon the standard by which a court looks at the question and evaluates the facts and decides which facts are important and which facts are relatively unimportant. The conclusion that certain facts are or are not helpful in deciding the question is a question of legal standard, or legal concept, and is one for a court to decide as a question of law.

In some instances the answer will be easy. The simplest case is probably that of a corporation which gets a char-

ter in one state but carries on all its business operations in another state. Obviously, in such a case the connection with the state of charter is nominal and the principal place of business is where the corporate activity is carried on. But from there the question becomes more difficult. A corporation may carry on much of its activity in the state of charter but have another state or perhaps more than one state where a great deal of its business activities take place. In such circumstances one is tempted to try to find some one criterion by which the question can be decided.

The place of the meeting of shareholders will not do. Corporations under modern statutes may have shareholders' meetings in a state other than the state of charter and that place of meeting may be the only corporate act which takes place in that state.[3] The place of meeting of the Board of Directors offers a tempting criterion. This is the more attractive because, subject to the approval of shareholders in some matters, it is the Board of Directors which makes the final decisions regarding corporate activity. One is tempted to say that where those final decisions are made is the principal place of business because the important questions are there decided. But one is on slippery ground in adopting such a test. Subject to the law of charter and the action of shareholders, Boards of Directors may choose their own place to meet at will. One can easily picture a peripatetic board which holds its meetings in some spot where the climate is favorable and recreational opportunities abound. That spot, of course, may change from time to time as the seasons and the board personnel changes.[4]

2. See S.Rep. No. 1830, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Adm. News 1958, pp. 3099, 3100. The text under the heading "Statement" makes clear the purpose of Congress.

3. See, e.g., N.J.Stat.Ann., tit. 14, § 10–4: "The meetings of the stockholders of every corporation of this State shall * * * be held at its principal office in this State, * * * but, if so provided in its certificate of incorporation, or

in by-laws adopted by two-thirds in interest of the stockholders, any meeting or meetings of the stockholders of any corporation organized under this Title may be held outside of the State * * *."
See also, Del.Code Ann., tit. 8, § 211; Pa.Stat.Ann., tit. 15, § 2852–501.

4. See, e.g., N.J.Stat.Ann., tit. 14, § 10–4: "The directors may hold their meetings outside of this State unless otherwise

One may also look to the place where physical activity is carried on. We can suppose a mining corporation where the actual digging of iron ore is on the Mesabi Range in Minnesota, the corporation has a New Jersey charter but all the directive activity of the corporation is conducted at its office in Superior, Wisconsin. Should the state of digging be called the principal place of business when all the contracts, sales and plans for expansion or contraction, the bank accounts and all the rest that make up this corporation's business activity take place in Wisconsin? In the absence of a simple single test we are forced to analyze our question further and endeavor to pick out as best we can the factor or combination of factors that seem to point to one place as the "principal" place of business. The concept may get artificial in some cases as indeed it is in the case before us. This great corporation has fourteen divisions of the parent corporation and eleven principal subordinate companies. Its various manufacturing activities are spread over practically all the United States and extend to foreign countries.[5] It has literally dozens of important places of business one of which we must pick out as the principal one because the statute says so.[6]

The appellants urge upon us that the test should be where the "nerve center" of the corporation's business is and they urge that the nerve center is New York. We do not find the figure of speech helpful. Dorland's Medical Dictionary tells us that a nerve center is "any group of cells of gray nerve substance having a common function." We think there will be, in the case of United States Steel Corporation, a good many collections of nerve cells serving the common function of making the corporate enterprise go.

We turn, therefore, from a pleasant and alluring figure of speech to a consideration of the facts of the Steel Corporation's life. The appellants in a very well constructed brief list for us the activities of the United States Steel Corporation which to their minds make New York its principal place of business. We make little out of the fact that the federal income tax return is filed in New York. As will be seen from enumeration of other things which take place in that state, New York would be the natural filing place for its tax return. We move then to things more important on the New York side of the question. The Board of Directors regularly meets in New York. It has, however, met in Pittsburgh and as already pointed out the Board can choose its own place of meeting. The Chairman of the Board is in New York, spending one day a week in Pittsburgh. The President divides his time evenly between New York and Pittsburgh. The Executive Committee of the Board meets regularly in New York. So does the Finance Committee. The Secretary of the corporation lives and has his office in New York and the Treasurer, Comptroller and General Counsel have their offices there. The company owns the building at 71 Broadway. From New York is mailed the annual report. Dividends are declared in New York. The Public Relations Department of the corporate enterprise is centered in New York. The Steel Corporation's major banking activities are there. The cash on hand and its govern-

provided by the by-laws or certificate of incorporation."

See also, Del.Code Ann., tit. 8, § 211; Pa.Stat.Ann., tit. 15, § 2852–402(4).

5. The corporation is registered to do business in 47 states and qualified to do business in five provinces of Canada.

6. The Senate Report speaks directly to this point. S.Rep. No. 1830, 85th Cong., 2d Sess. (1958). It is there stated:
"This [subsection c] will eliminate those corporations doing a local business with a foreign charter but will not eliminate those corporations which do business over a large number of States, such as the railroads, insurance companies, and other corporations whose businesses are not localized in one particular State. Even such a corporation, however, would be regarded as a citizen of that one of the States in which was located its principal place of business.' U.S.Code Cong. & Adm. News 1958, p. 3102.

ment securities are managed and controlled in New York and the corporation's pension funds are invested in New York. To us this adds up to the conclusion that as at present conducted the final decisions through the Board of Directors, the President and top executive officers are made in New York state. If the test of "principal place of business" is where such final decisions are made on corporate policy, including its financing, then the appellants are right in pointing to New York as the principal place of business.

■ After balancing these important and significant facts with those pointing to Pennsylvania, we reach the conclusion that Pennsylvania and not New York is the principal place of business. It is in Pennsylvania that the Operation Policy Committee sits and conducts its affairs. The Board of Directors has delegated to this committee the duty of conducting the business of the corporation relating to manufacturing, mining, transportation and general operation. It is composed of the Chairman of the Board, the President, the Chairman of the Finance Committee, the General Counsel and the seven Executive Vice Presidents. It makes policy decisions, of course subject to the Board of Directors. It appoints division presidents and corporate officers through the rank of Administrative Vice President. The seven Executive Vice Presidents, one at the head of each of the seven great branches of the corporation, have headquarters and staffs in Pittsburgh. All but one of the seventeen Administrative Vice Presidents and twenty-two out of the twenty-five Vice Presidents are located in Pittsburgh with their staffs. So, too, is the General Solicitor and his staff. In Pennsylvania almost thirty-four per cent of the employees classified as exempt under the Fair Labor Standards Act (29 U.S.C.A. § 201 et seq.) are located. This is fourteen times as many as there are in New York.

■ All this points to us the conclusion that business by way of activities is centered in Pennsylvania and we think it is the activities rather than the occasional meeting of policy-making Directors which indicate the principal place of business.

■ To this center of corporate activity we may add some other facts having to do with physical location of employer's plants and the like. We think these elements are of lesser importance, but added to the items already enumerated pointing to the center of corporate activity, we think they have some significance. For instance, Pennsylvania has 32.13 per cent of employee personnel, twenty-five times as many as New York and more than twice as many as any other state. More than one-third of the $2,-547,594,414 worth of tangible property is in Pennsylvania. In New York there is less than one per cent. Pennsylvania leads in steel productive capacity. This is about thirty-five per cent of the total capacity of the corporation. New York has none. Other items could be added to this list but we have picked those which we think most significant. It is true that Pennsylvania does not have the majority of the productive capacity of this corporation nor the majority of the employees of this corporation. It does have, however, more than any other state. These facts, added to what we have found to be the headquarters of day-to-day corporate activity and management, add up to the irresistible conclusion that the principal place of business of this giant corporation is in Pennsylvania.

We add as an appendix to this opinion a list of the cases cited to us by counsel and found in our own research. We are not discussing the individual cases one by one. They are illustrative of the efforts of courts in varying situations to find the answer to the question which concerns us here. The courts have balanced the factors as we have but in no case has there been the complex list of factors with which we have dealt and the decisions are helpful to us in methodology rather than pointing to any particular conclusion for this case.

The judgments of the district court will be affirmed.

### Appendix

Cases arising under 28 U.S.C. § 1332(c).

Potocni v. Asco Mining Co., Inc., D.C. W.D.Pa.1960, 186 F.Supp. 912.

Wear-Ever Aluminum, Inc. v. Sipos, D.C.S.D.N.Y.1960, 184 F.Supp. 364.

Metro Industrial Painting Corp. v. Terminal Const. Co., D.C.S.D.N.Y.1960, 181 F.Supp. 130.

Mattson v. Cuyuna Ore Co., D.C.D. Minn.1960, 180 F.Supp. 743.

Hughes v. United Engineers & Constructors, Inc., D.C.S.D.N.Y.1959, 178 F. Supp. 895.

Bryfogle v. Acme Market, Inc., D.C. E.D.Pa.1959, 176 F.Supp. 43.

Moesser v. Crucible Steel Co. of America, D.C.W.D.Pa.1959, 173 F.Supp. 953.

Riley v. Gulf, Mobile & Ohio R.R. Co., D.C.S.D.Ill.1959, 173 F.Supp. 416.

Scot Typewriter Co. v. Underwood Corp., D.C.S.D.N.Y.1959, 170 F.Supp. 862.

Cases arising under 11 U.S.C.A. § 11, sub. a(1) and its predecessors.

In re Flexton Corp. 2 Cir., 1953, 208 F.2d 869.

Fada of New York v. Organization Service Co., Inc., 2 Cir., 1942, 125 F.2d 120.

In re Hudson River Navigation Corp., 2 Cir., 1932, 59 F.2d 971.

Lawrence v. Atlantic Paper & Pulp Corp., 5 Cir., 298 F. 246, certiorari denied 1924, 266 U.S. 606, 45 S.Ct. 92, 69 L.Ed. 464.

In re Pusey & Jones Co., 2 Cir., 1922, 286 F. 88, certiorari denied 1923, 261 U.S. 623, 43 S.Ct. 519, 67 L.Ed. 832.

Dryden v. Ranger Refining & Pipe Line Co., 5 Cir., 280 F. 257, certiorari denied 1922, 260 U.S. 726, 43 S.Ct. 89, 67 L.Ed. 483.

Continental Coal Corp. v. Roszelle Bros., 6 Cir., 1917, 242 F. 243.

Home Powder Co. v. Geis, 8 Cir., 1913, 204 F. 568.

In re Guanacevi Tunnel Co., 2 Cir., 1912, 201 F. 316.

Burdick v. Dillon, 1 Cir., 1906, 144 F. 737, appeal dismissed per stipulation 1907, 205 U.S. 550, 27 S.Ct. 792, 51 L.Ed. 925.

In re Diamond Star Timber Corp., D.C. N.D.N.Y.1946, 64 F.Supp. 849.

In re DeSoto Crude Oil Purchasing Corp., D.C.W.D.La.1940, 35 F.Supp. 1.

Watters v. Hamilton Gas Co., D.C.S.D. W.Va., 10 F.Supp. 323, affirmed 4 Cir., 79 F.2d 438, certiorari denied 1935, 296 U.S. 647, 56 S.Ct. 309, 80 L.Ed. 460.

In re American & British Mfg. Corp., D.C.D.Conn.1924, 300 F. 839.

In re Devonian Mineral Spring Co., D.C.N.D.Ohio 1920, 272 F. 527.

In re Worcester Footwear Co., D.C.D. Mass.1918, 251 F. 760.

In re San Antonio Land & Irrigation Co., Ltd., D.C.S.D.N.Y.1916, 228 F. 984.

In re R. H. Pennington & Co., D.C.W. D.Ky.1915, 228 F. 388.

In re Tygarts River Coal Co., D.C.N.D. W.Va.1913, 203 F. 178.

In re Elmira Steel Co., D.C.N.D.N.Y. 1901, 109 F. 456.