**LACKAWANNA REFUSE REMOVAL, INC., Plaintiff,**

v.

**PROCTOR AND GAMBLE PAPER PRODUCTS CO., Defendant.**

Civ. No. 77–568.

United States District Court, M. D. Pennsylvania.

June 28, 1979.

Francis J. Wormuth, Carbondale, Pa., Thomas P. Kennedy, Scranton, Pa., for plaintiff.

James M. Howley, Scanlon, Howley & Scanlon, James W. Scanlon, Scranton, Pa., for defendant.

## MEMORANDUM

NEALON, Chief Judge.

On November 9, 1978, after a trial by jury, judgment was entered for defendant

(Proctor and Gamble). Presently before the court are motions by plaintiff to vacate and set aside the judgment pursuant to, inter alia, Fed.R.Civ.P. 60(b)(4), for lack of subject matter jurisdiction, and for a new trial, pursuant to Fed.R.Civ.P. 59, because of various alleged trial errors. Also before the court is a motion by defendant for a protective order in regards to post trial interrogatories propounded to it by plaintiff. The motions will be held in abeyance and the parties will be directed to submit to the court appropriate documentation and additional briefs on the issue of subject matter jurisdiction.

Plaintiff originally alleged as a basis for jurisdiction in this diversity action that it is a Pennsylvania corporation with its principal place of business in this state and that defendant is an Ohio corporation with its principal place of business in that state. See Doc. 29, plaintiff's second amended complaint, filed June 15, 1978. These allegations were admitted by defendant. See Doc. 41, defendant's answer to plaintiff's second amended complaint, filed Aug. 31, 1978. The claims asserted by plaintiff revolved around its termination as an independent contractor hired to dispose of solid waste products produced at a paper products plant owned by defendant and located in Mehoopany, Pennsylvania.

Plaintiff alleges that at the trial James Huffman, an employee of Proctor and Gamble, testified that the Mehoopany plant was the largest one operated by defendant.[1] This allegation is not controverted by defendant. Plaintiff further alleges that it was not until its attorney was reviewing his file for preparation of the instant motions that it began to consider that, given Mr. Huffman's testimony, defendant's principal place of business might be in Pennsylvania. If, in fact, defendant's principal place of business was in Pennsylvania at the time of filing of this action, there would be no diversity of citizenship, see 28 U.S.C. § 1332(c), and the court would not have subject matter jurisdiction.

In its brief in opposition to the instant motion defendant does not address the merits of the lack of subject matter jurisdiction claim. Rather it argues that since plaintiff chose this forum, participated in extensive discovery, never raised the issue of subject matter jurisdiction either before trial or during the trial after the testimony of Mr. Huffman, and waited until after an adverse verdict, it should not now be allowed to raise the issue of subject matter jurisdiction. Although I am sympathetic to defendant's position, I believe that plaintiff can raise the issue now and it must be considered by the court.

This court, one of limited jurisdiction, only has the power to determine cases over which it has subject matter jurisdiction. The general, and almost inflexible, rule is that the claim of lack of subject matter jurisdiction can be raised at any time, see Fed.R.Civ.P. 12(h)(2), including in a motion made pursuant to Fed.R.Civ.P. 60(b)(4). See 5 Wright & Miller, Federal Practice and Procedure § 1393, at 866 (1969). Even the party who originally invoked the jurisdiction of the court may raise the claim, and it may be raised after a trial on the merits. See American Fire and Casualty Co. v. Finn, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951); Television Reception Corporation v. Dunbar, 426 F.2d 174 (6th Cir. 1970); 1 Moore's Federal Practice ¶ .60(4), at 625–626. Moreover, it has been held that a federal district court does not have the discretion to ignore a lack of subject matter jurisdiction. See Joyce v. United States, 474 F.2d 215 (3rd Cir. 1973).

The one possible exception to the above stated general rule was set out in this circuit in DiFrischia v. New York Central Railroad Co., 279 F.2d 141 (3rd Cir. 1960). In that action, after a dispute arose as to diversity and plaintiff had moved for a preliminary hearing on the issue, the parties entered into a stipulation agreeing that the court had subject matter jurisdiction. Thereafter the court entered an order stating it had jurisdiction. There followed al-

---

1. No trial transcript has been prepared.

most two years of trial preparation. Immediately before trial defendant moved to dismiss for lack of subject matter jurisdiction. The motion was granted. The appellate court reversed, finding that by entering into the stipulation defendant had in effect admitted the jurisdictional facts. The court was concerned that the defendant not be permitted to ". . . play fast and loose with the judicial machinery and deceive the courts." In effect, defendant was estopped from denying the previously admitted jurisdictional facts.

Proctor and Gamble relies on this holding. However, our case is not controlled by DiFrischia because 1) a Supreme Court pronouncement in *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 377 n.21, 98 S.Ct. 2396, 2404 n.21, 57 L.Ed.2d 274 (1978), and subsequent decisions in this circuit, e. g., *Joyce v. United States*, 474 F.2d 215 (3rd Cir. 1973), appear to have eviscerated the *DiFrischia* ruling;[2] 2) it has been held that *DiFrischia* turns on its own special facts, including the fact that by the time the action was dismissed the statute of limitations had run on plaintiff's claim, see *Ramsey v. Mellon National Bank and Trust Company*, 350 F.2d 874 (3rd Cir. 1965); and 3) the thrust of *DiFrischia* is that a party may be held to an admission of jurisdictional facts. *See Greenbaum v. United States*, 360 F.Supp. 784 (E.D.Pa.1973). Here, although plaintiff alleged the jurisdictional facts, it did not, and was in no position to, admit the truth of these facts. The facts were alleged against defendant. If an allegation of jurisdiction was sufficient to estop a litigant from denying jurisdiction, then in point of fact one who invoked the jurisdiction of the court would not later be able to raise the issue of subject matter jurisdiction. And plaintiff did not admit anything by failing to raise the issue immediately after Mr. Huffman's testimony.[3] It does

offend fairness and judicial economy to allow a plaintiff to invoke the court's jurisdiction and then, after suffering an adverse decision, challenge that jurisdiction. Nevertheless, the law regarding subject matter jurisdiction is clear. Also, a defendant may have some obligation, if it is appropriate, to assert a lack of subject matter jurisdiction.

■ Of course, a litigant, without some foundation, could not simply state that subject matter jurisdiction was lacking and invoke post trial judicial process. But here, although it is impossible to know what weight should be given the fact that defendant's largest plant is in this state without knowing more about defendant's corporate network and operation, that fact does suggest the possibility that subject matter jurisdiction may be lacking. Hence, further inquiry is necessary.[4]

■ The parties have locked horns as to which one has the burden of proof regarding the jurisdictional issue. Although plaintiff normally has the burden of proof in a Fed.R.Civ.P. 60(b) motion, see 7 Moore's Federal Practice ¶ 60.28(3), at 410, it would appear that since defendant is contending that subject matter jurisdiction exists, that it has the burden on this issue. *See* 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3625, at 805 (1975). Additionally, since defendant is in the best position to know the pertinent facts and obtain the necessary material it makes sense that it be required to come forth with the relevant information. It will be ordered that defendant expand the record and supply the court with affidavits, and any other documents or copies of documents which are necessary and pertinent to the court's inquiry regarding subject matter jurisdiction. For a discussion of what in-

---

**2.** One court has described *DiFrischia* as standing alone. *See Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976).

**3.** Furthermore, without more, it cannot be said that because plaintiff did not raise the issue earlier it has played "fast and loose" with the court in terms of deceiving the court.

**4.** Since plaintiff's motion was filed within seven (7) days after the conclusion of the trial, it has met the reasonable time requirement of Fed.R.Civ.P. 60(b).

formation may be necessary to a proper determination see, inter alia, 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3625 (1975).[5] Defendant will also be required to submit a brief in support of its position. Plaintiff will be given the opportunity to respond.

## MEMORANDUM AND ORDER

### ON MOTIONS TO VACATE AND FOR NEW TRIAL

In this action plaintiff, Lackawanna Refuse Removal, Inc., brought suit against defendant, Procter and Gamble Paper Products Company, seeking damages for losses arising out of the termination by defendant of plaintiff's status as an independent contractor hauling waste products from defendant's paper products plant in Mehoopany, Pennsylvania. After a jury returned a verdict for defendant, plaintiff filed (a) a motion to vacate and set aside the judgment for lack of subject matter jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship was lacking inasmuch as plaintiff, a Pennsylvania corporation, had discovered that defendant's principal place of business was in Pennsylvania and not Ohio; and (b) a motion for new trial based on alleged trial errors. Both motions will be denied.

### SUBJECT MATTER JURISDICTION

Plaintiff originally alleged as a basis for diversity jurisdiction that it was a Pennsylvania corporation with its principal place of business in this state and that defendant was an Ohio corporation with its principal place of business in Ohio. Defendant admitted this allegation in its answer. Plaintiff now asserts that at the trial James Huffman, an employee of defendant, testified that the Mehoopany plant was the largest one operated by defendant. Based on that statement, plaintiff filed this motion and requested further discovery. In response the court ordered defendant to submit affidavits and any other necessary and relevant documents on the issue of subject matter jurisdiction.[1] Defendant filed affidavits, both parties submitted briefs, and oral argument was held October 23, 1979.

Defendant concedes that its largest plant is in Mehoopany but contends that the principal place of business is in Cincinnati, Ohio, where the corporate offices are located. Both parties cite *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960) as the controlling authority in this circuit on the issues presented here. In *Kelly*, the court adopted a formula that recognized the principal place of business to be that state which was the headquarters of day-to-day corporate activity and management. *See also Quaker State Dyeing & Finishing Co. v. I. T. T. Terryphone Corp.*, 461 F.2d 1140 (3rd Cir. 1972). Other significant elements to be considered, but of lesser importance in determining the center of corporate activity, were the percentage of employees, the location of tangible property, and the productive capacity within the states involved. Defendant submitted three separate affidavits of W. D. Johann, Vice President of defendant corporation, and plaintiff countered with an affidavit of its counsel, Thomas P. Kennedy, Esq. The Johann affidavits establish the following:

Defendant has manufacturing facilities in Green Bay, Wisconsin; Cheboygan, Michigan; Mehoopany, Pennsylvania; Cape Girardeau, Missouri; Modesto, California; Oxnard, California; and Albany, Georgia. Four Division Managers, two of whom have offices in Cincinnati, Ohio, have responsibility for these seven plants and all report to Mr. C. E. Eberle, Manager of Manufacturing, who is also based in Ohio. A six-person

---

5. It should be noted that whether diversity jurisdiction exists is determined by the facts as they existed at the time of *commencement* of the action. *See Smith v. Sperling*, 354 U.S. 91, 93, 77 S.Ct. 1112, 1113, 1 L.Ed.2d 1205 (1957); 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3608 (1975).

1. When a question of federal jurisdiction is raised, the court may inquire, by affidavits or otherwise, into the facts as they exist. *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3rd Cir. 1972).

Management Committee assists Mr. J. G. Smale, President of the Company, in the control and management of the Company's affairs and is responsible for the authorization of major capital projects and continuing expenditures in excess of $100,000 per year, lease and rental agreements exceeding one year and $200,000 in value, and corporate-wide personnel policies, and all were based in, and conducted all business from, offices in Ohio. All directors and officers are located in Ohio, all meetings of shareholders and directors were held there, the corporate-wide accounting responsibility rested with Mr. C. P. Slater, whose office is in Ohio, the corporate books and accounts are kept there, and the federal tax return was filed in Cincinnati, Ohio.

Defendant is a wholly owned subsidiary of the Procter & Gamble Company, Cincinnati, Ohio, and derives substantially all of its income from the sale of finished paper products to its parent company. It does not sell or distribute finished products to retailers, wholesalers, or ultimate consumers in Pennsylvania or in any of the other states where it has manufacturing operations. Ninety-two (92)% of the purchases of defendant company for the fiscal year ending June 30, 1977, were made by the Buying Department located in Cincinnati, Ohio. Its tangible assets are found in ten states—of which 28.8% is in Pennsylvania, 24.7% in Wisconsin, 18.4% in Georgia, 11.2% in California, and 10.4% in Missouri. Only .0006% of the total assets are in Ohio because the Administrative Offices and technical facilities situated there are leased from defendant's parent company, Procter & Gamble Company. It employs 8,365 employees, of whom 32.8% are employed in Pennsylvania, and 26.4% in Wisconsin. Of the Company's state case production, 33.5% occurred in Pennsylvania, 25.3% in Wisconsin, 13.9% in Georgia, 12.5% in Missouri, 9.7% in California, and 5.1% in Michigan.

As can be seen, the defendant has a national, multi-state operation directed from its home office in Cincinnati, Ohio. While the Pennsylvania plant appears to be the largest and most productive of defendant's operations in seven states, the headquarters is unquestionably in Ohio where all directors, officers, and key management personnel perform their duties. Only two of the higher echelon of management activity actually function outside of Ohio, viz., Mr. J. T. McKinnon in Pennsylvania and Mr. E. A. Thompson in Wisconsin, but both report directly to the Manager of Manufacturing in Ohio. This is a situation totally unlike that in *Kelly* where the Board of Directors in New York had delegated to the Operation Policy Committee, sitting in Pennsylvania, the duty of conducting the day-to-day business of the company. Moreover, in *Kelly*, all of the seven Executive Vice Presidents, one at the head of each of the seven great branches of the company, sixteen of the seventeen Administrative Vice Presidents, and twenty-two of the twenty-five Vice Presidents, had headquarters and staffs in Pennsylvania. Certainly compared to New York, where only policy decisions were made, Pennsylvania was indeed the center of business activities. In the case before us, aside from some factors which *Kelly* referred to as having lesser importance, viz., physical location of the plants, number of employees and largest productive capacities, meaningful overall corporate action takes place in Ohio. Pennsylvania has no significant input into the activities of this giant corporation outside of the operation in Mehoopany and even there purchasing decisions were limited. There may have been more production in Pennsylvania than in any other state, but there was very little critical corporate performance to qualify it as the center of corporate affairs.

As only one state can qualify as the principal place of business, on the record before me it must be Ohio and certainly not Pennsylvania. I conclude, therefore, that diversity jurisdiction does exist in this case.

## TRIAL ERRORS

Before considering the alleged trial errors, a brief summary of facts is necessary. Plaintiff corporation is engaged in the waste hauling and landfill business. Defendant corporation had been operating its own landfill operation but in December of

1975 decided to conserve its landfill for future use and began to explore the possibility of contracting with an outside firm for the hauling of the waste and disposing of it at a site distant from defendant's operation in Mehoopany, Pa. Bids were solicited and ultimately plaintiff, through its President, Peter Iacavazzi, entered into a three-month trial arrangement with defendant, commencing December 29, 1975. Defendant concedes that it contemplated extending the contract for another year if the trial proved successful. According to defendant's witnesses, plaintiff's work was unsatisfactory, security and environmental problems developed concerning his operation, and a bad credit report on plaintiff was received by defendant. The contract was not extended when the three-month period expired and Iacavazzi was advised on April 12, 1976, that another contractor was going to be given a trial run (the Knott-Amity arrangement) and on April 19, 1976, was told that his contract was being terminated. Plaintiff brought suit contending one Frank Srebro, defendant's Grounds and Service Manager at the Mehoopany plant, had a conversation with him on March 29, 1976, and promised that a new contract had been awarded to plaintiff and that the executed contract was on its way from the home office in Cincinnati, Ohio. According to plaintiff, this was a false and fraudulent misrepresentation which was calculated by defendant's employees to deceive Iacavazzi in order that plaintiff would continue to haul defendant's waste products until the Knott-Amity arrangement was in place and ready to operate. Srebro denied that any such conversation took place. Special Interrogatories were submitted to the jury which specifically found that (a) Srebro and Iacavazzi did not have a conversation on March 29, 1976, concerning the awarding of a contract to plaintiff; and (b) there was no misrepresentation made to Iacavazzi by defendant's employees.

Two of plaintiff's grounds for a new trial are specious and warrant little comment. In one, plaintiff complains that defense counsel inflamed the passions of the jury when he said it was no big deal to start a lawsuit and that it cost only $35 or $40 to do so. Plaintiff's counsel didn't except during the closing argument and, consequently, has waived any objection. Even if the argument is considered, it is meritless. The second assertion is that the court should have sua sponte dispersed the jury at 11:00 P.M. after it had been deliberating for seven hours and failure to do so resulted in a verdict that was the result of extreme fatigue and exhaustion. No one disputes that the court called the jury into the courtroom at 11:00 P.M. and advised them that they could adjourn for the night and reassemble in the morning if they were tired or concerned about returning home at a late hour. They were informed to advise the bailiff if that was their desire. The invitation to adjourn was not accepted and instead the jury directed the bailiff to call their homes with the message they would be late in returning home. Plaintiff made no request that the court direct the jury to interrupt its deliberations and, even if the request were made, it would have been refused as an unjustifiable intrusion into the province of the jury.

Plaintiff's third point is that the court erred in granting defendant's motion for a protective order against plaintiff's Interrogatory requesting all studies, analyses, reports or recommendations concerning or relating to waste disposal at its Mehoopany plant which were prepared by defendant or its employees during the period 1974, 1975 or 1976. In seeking the protective order, defendant advised the court that because of the nature of its operation, it had in its possession extensive and voluminous studies, reports and analyses concerning waste material of a nature totally unconnected and irrelevant to that at issue in this lawsuit and that its compilation would be unduly burdensome. Plaintiff had been supplied with substantial and adequate documentation to prepare its case as the record developed at the trial would clearly demonstrate. Consequently, the absence of this data did not impair plaintiff's trial preparation. Under the circumstances, the granting of the motion was deemed appropriate at the time and nothing advanced by plaintiff in its post-trial argument has indicated otherwise.

Plaintiff's fourth contention surrounds the use, and failure to disclose in advance of trial, of a journal maintained by Gerald Mussari, defendant's Industrial Relations Manager. The background giving rise to this issue concerned the testimony of Mr. Iacavazzi in which he attempted to buttress his testimony relative to the alleged discussion on March 29, with Mr. Srebro by stating that the Union personnel were handing out pamphlets outside the gate between 2:00 P.M. and 4:00 P.M. on that day. By way of defense, Mr. Mussari testified that the dates of Union handouts are regularly recorded by him in a journal and the journal reflected that there were no handouts on March 29. A review of plaintiff's Interrogatories does not reveal any language that could be reasonably interpreted as requesting such a document. Moreover, the need for the journal didn't surface at trial until Iacavazzi affirmatively testified to the handout incident. Finally, defendant was directed to turn over the journal to plaintiff's counsel and adequate time was allowed for inspection and analysis. There has been absolutely no showing of prejudice to plaintiff or of bad faith on the part of defendant.

Therefore, plaintiff's motions to vacate and set aside the judgment and for a new trial will be denied.