**UNITED STATES FIDELITY AND GUARANTY COMPANY (U.S.F. & G.)**

v.

**Rudolph J. DiMASSA and Ruggero D'Onofrio.**

**Civ. A. No. 77–2564.**

United States District Court, E.D. Pennsylvania.

April 6, 1983.

Francis T. McDevitt, Naulty, Scaricamazza & McDevitt, Philadelphia, Pa., for plaintiff.

Anthony M. DiMassa, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Presently before me in this suit by a bonding company on an indemnity agree-

ment are numerous motions filed by defendant, Rudolph J. DiMassa.[1] DiMassa's motions which essentially contest this court's subject matter jurisdiction[2] and plaintiff's capacity to maintain suit in Pennsylvania,[3] were filed in response to my granting summary judgment in favor of plaintiff and against DiMassa. On March 16, 1983, I received evidence on these issues and heard counsel's arguments. After careful review of the testimony and those arguments, I conclude plaintiff has proved it has capacity to maintain suit in Pennsylvania and that this court has subject matter jurisdiction.

■ Plaintiff filed this matter alleging diversity of citizenship as the basis of the court's subject matter jurisdiction. It is undisputed that plaintiff is a corporation incorporated under the laws of the state of Maryland and DiMassa is a citizen of the Commonwealth of Pennsylvania. Because a corporation is a citizen of the state of its incorporation and the state where it maintains its principal place of business, 28 U.S.C. § 1332(c) (1982), if plaintiff's principal place of business is Pennsylvania,[4] as DiMassa contends, this suit must be dismissed.

1. DiMassa has filed the following motions:
   (a) to strike and/or vacate the order granting summary judgment for plaintiff;
   (b) to vacate the order dated October 17, 1980, granting in part plaintiff's motion for protective order;
   (c) for discovery on the issue of plaintiff's principal place of business;
   (d) to amend DiMassa's motion to dismiss;
   (e) to amend DiMassa's answer; and
   (f) to dismiss or for summary judgment.

2. The question of subject matter jurisdiction can be raised at any point in the litigation. Wright, Miller, Cooper, 13 Federal Practice and Procedure, § 3625 (1975).

3. Without passing on the merits of the allegations in the two motions to amend, I will grant the motions for the sake of convenience and consider the merits of the lack of capacity defense.

4. The only relevant issue in this regard is the location of plaintiff's principal place of business at the time the suit was filed. *Field v. Wolkswagenwerk AG,* 626 F.2d 293, 304 (3d Cir.1980); *S.S. Dadzie v. Leslie,* 550 F.Supp. 77, 79 (E.D.Pa.1982).

Plaintiff, as the party who invoked diversity jurisdiction, has the burden of proving all facts upon which jurisdiction could be sustained. If plaintiff does construct a prima facie showing of diversity, defendant must overcome or rebut this showing in order to dismiss the complaint. Support for defendant's position may be derived from affidavits, depositions and sworn documents filed by the parties from which the Court can examine and evaluate all relevant factors and surrounding circumstances but the exact method of determining the jurisdictional issue lies within the sound discretion of the district court.

*Holman v. Carpenter Technology Corp.,* 484 F.Supp. 406, 409 (E.D.Pa.1980) (citations omitted).

■ In addition to its allegations in the amended complaint in 1978, plaintiff filed an affidavit[5] in which facts are alleged supporting the conclusion stated therein that plaintiff's principal place of business is Baltimore, Maryland, the location of its corporate headquarters. In an effort to contest plaintiff's showing, DiMassa, in October, 1982, filed an affidavit[6] stating in con-

5. Plaintiff's affidavit reads in its entirety:
   The plaintiff, United States Fidelity and Guaranty Company, is a Maryland Corporation. The principal place of business of the United States Fidelity and Guaranty Company is located in Baltimore, Maryland. The corporate headquarters where principal day-to-day business operation and activities of the corporation are formulated and carried out, are located in Baltimore, Maryland. The principal place of business of the United States Fidelity and Guaranty Company is not located in Pennsylvania.
      s/ Joseph N. Dunleavy
    Title:  Claims Supervisor

6. DiMassa's affidavit reads in its entirety:
   RUDOLPH J. DI MASSA, ESQUIRE, being duly sworn according to law, deposes and says that he is one of the defendants above named and that Plaintiff USF & G at the time of the filing of this instant action and to date maintains a huge complex of executive offices wherein are located the branch offices and regional corporate headquarters for USF & G at Plymouth Commons II, Plymouth Meeting, Montgomery County, Pennsylvania, and that the facts set forth in the foregoing

clusionary terms that plaintiff's principal place of business is Pennsylvania.[7] Despite the vagueness of DiMassa's affidavit, I will assume that at this juncture, plaintiff has the burden of proving the court's subject matter jurisdiction by a preponderance of the evidence.

■ In *Kelly v. United States Steel Corp.,* 284 F.2d 850 (3d Cir.1960), the United States Court of Appeals for the Third Circuit adopted a method of determining a corporation's principal place of business.[8] In *Kelly, supra,*

> Judge Goodrich rejected the "nerve-center test" which located the principal place of business where policy decisions were made. Instead he adopted an "operational test" which looked to the state where the corporation had its "headquarters of day-to-day corporate activity and management." *Kelly, supra,* at 854. Facts significant to this analysis include locations of the personnel, equipment,

and real estate of the corporations and locations of executive and high-level management's daily decisions. *See, e.g., Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.,* 461 F.2d 1140 (3d Cir.1972); *Holman v. Carpenter Technology Corp.,* 484 F.Supp. 406 (E.D.Pa.1980); *United Industrial Corp. v. Gira,* 204 F.Supp. 410 (D.Del.1961).

> In the cited cases, the courts' task was to determine which of two states harbored the activity most significant for corporate operations.

*Crum v. Veterans of Foreign Wars,* 502 F.Supp. 1377, 1380 (D.Del.1980).

■ At the March 16, 1983, hearing, DiMassa testified that USF & G occupied a large building in Plymouth Meeting. He had never been in it, did not know how many USF & G employees were there, nor the amount of space devoted to USF & G operations. He had never been to the Balti-

---

Affidavit are true and correct to the best of his knowledge, information and belief.

                              s/ Rudolph J. DiMassa

7. DiMassa has filed a motion to vacate the order dated October 17, 1980, and a motion for discovery on the issue of plaintiff's principal place of business. Both motions must be refused. The order dated October 17, 1980, granted plaintiff's motion for protective order with respect to the deposition of an officer of plaintiff in regard to the corporate structure of plaintiff. Said ruling was subject to reconsideration if DiMassa submitted an affidavit setting forth facts on which he relied in asserting that plaintiff's principal place of business was Pennsylvania. In *all* other respects, the motion for protective order was refused. DiMassa now contends that the order placed on him the burden of disproving subject matter jurisdiction yet precluded him from engaging in *any* discovery on the jurisdictional issue. Accordingly, he requests that I vacate the October 17, 1980, order and allow him a reasonable period of time for discovery. DiMassa's interpretation of the October 17, 1980, order is neither supported by the language of the order nor the conduct of the parties in the litigation. First, the October 17, 1980, order precluded *only* the taking of a deposition of a corporate officer regarding one issue and nothing else. All other methods of discovery on the jurisdictional issue were available to DiMassa. Second, the burden of proof regarding jurisdiction was not shifted to DiMassa. Plaintiff had made a prima facie showing of subject matter jurisdiction. The burden to rebut this showing with specific

factual allegations properly rested with DiMassa. Said facts were available to DiMassa by way of interrogatories, request for production, or request for admissions. That DiMassa failed to engage in said discovery methods after the October 17, 1980, order is of no moment now. Finally, various letters between the parties and to the court indicate that DiMassa intended to depose representatives of plaintiff and plaintiff offered to make said representatives available for deposition notwithstanding the October 17, 1980, order. DiMassa's argument that he still was precluded from taking depositions by the court's order until the court approved a stipulation on the issue is patently frivolous. Accordingly, because DiMassa was not precluded from engaging in discovery on the jurisdictional issue, his pleas to take discovery now come too late. Similarly, the October 17, 1980, order, not having been improper in any sense, DiMassa's motion to vacate will be refused.

8. Contrary to the assertions of counsel for DiMassa, a corporation only has one principal place of business. *Woodbridge Plastics Inc. v. Borden, Inc.,* 473 F.Supp. 218 (S.D.N.Y.1979), *aff'd mem.,* 614 F.2d 1293 (2d Cir.1980); *Unger v. Del E. Webb Corp.,* 233 F.Supp. 713 (N.D. Cal.1964); *Campbell v. Associated Press,* 223 F.Supp. 151 (E.D.Pa.1963); Wright, Miller, & Cooper, 13 Federal Practice and Procedure § 3624 at 782 (1975); 1 Moore's Federal Practice ¶ 0.77 [1–2] at 717–8, ¶ 0.77 [3–1] at 717.60 (2d ed. 1982).

more, Maryland offices of USF & G, had no knowledge concerning the size of the building, the number of persons who worked there, nor the executive level of those whose offices were there. In short, he had no basis to compare the Plymouth Meeting offices or personnel with those in Maryland.

Joel Klock, Claims Supervisor of the Philadelphia office and eleven year employee of plaintiff, testified extensively regarding the corporate structure and location of day to day management activity of plaintiff. Mr. Klock stated that while there are three branch offices of USF & G in Pennsylvania, the home office in Baltimore, Maryland, controls all corporate operations, occupies 22 stories of a 39 story building which bears its name, and houses the offices of the president and other corporate executives. Contrariwise, the Philadelphia branch office is housed in one third of a two story building and contains no executive offices. Additionally, the main information computer is located in Baltimore and all decisions regarding the issuance of bonds are made there. Furthermore, while USF & G employs 384 people in Pennsylvania, including 95 in the Philadelphia office, it employs 1800 people in its Baltimore office. Finally, Mr. Klock stated that Florida, Mississippi, Georgia, and Texas had branch offices larger than the Pennsylvania offices in terms of employees and revenue generated. Because a review of the above facts demonstrates Maryland harbors the activity most significant for corporate operations, I conclude plaintiff's principal place of business is located in Baltimore, Maryland. Therefore, this matter falls within the court's subject matter jurisdiction.

■ Having resolved DiMassa's contention regarding subject matter jurisdiction, I turn now to his assertion that USF & G lacks capacity to maintain suit in Pennsylvania because of its failure to obtain a certificate of authority to do business here as a foreign corporation pursuant to the Pennsylvania Business Corporations Law, Pa.Stat.Ann. tit. 15, §§ 2001 et seq. (Purdon 1967). In view of the fact that the statute relied on by DiMassa is inapplicable to USF & G,[9] DiMassa's argument is meritless and USF & G is not barred from maintaining suit here.

■ The rules of statutory construction in Pennsylvania provide:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision....

1 Pa.Cons.Stat.Ann. § 1933 (Purdon Supp. 1982). Thus, where a specific statute applies, a general one will not unless effect may be given to both. See Olshansky v. Montgomery County Election Board, 488 Pa. 365, 412 A.2d 552 (1980).

■ In this case there are two statutes which dictate that USF & G must secure a certificate of authority from the Insurance Commissioner, which it has done, rather than from the Department of State as DiMassa contends. First, Pa.Stat.Ann. tit. 40, § 46(a) (Purdon 1971) states in pertinent part: "[n]o insurance company, association, or exchange of another state or foreign government shall do an insurance business within this Commonwealth without first having obtained a certificate of authority from the Insurance Commissioner authorizing such company, association or exchange to do such business." It is clear from Mr. Klock's testimony that USF & G is in the insurance business. For example, he testified regarding USF & G's under-

---

**9.** Even if the Business Corporation Law applied to USF & G, it would be exempt from having to obtain a certificate of authority because its sales are accomplished through independent contractors, Pa.Stat.Ann. tit. 15, § 2001 B(5) (Purdon 1967), and it transacts business in interstate commerce, Pa.Stat.Ann. tit. 15, § 2001 B(9) (Purdon Supp.1982). See also National Chemsearch Corp. of New York, Inc. v. Bogatin, 233 F.Supp. 802, 807 (E.D.Pa.1964), vacated on other grounds, 349 F.2d 363 (3d Cir. 1965); United Fruit Co. v. Department of Labor and Industry, 344 Pa. 172, 175, 25 A.2d 171 (1942).

writing and claims departments. Second, Pa.Stat.Ann. tit. 40, § 832 (Purdon Supp. 1982), regarding surety companies states in pertinent part:

§ 832. Conditions for doing business

Every surety company, to be qualified to so act as surety or guarantor, must be authorized, under the laws of the State or country where incorporated and its charter, to guarantee the fidelity of persons holding places of public or private trust, and to guarantee the performance of contracts other than insurance policies, and to execute bonds and undertakings required or permitted in action or proceedings or by law allowed, must: ... before transacting business in this State under this act, *file with the Insurance Commissioner* a certified copy of its charter or act of incorporation, (e) *a written application to be authorized to do business under this act,* ... (emphasis supplied).

Because of the nature of this suit, it is obvious that USF & G is a surety company. Thus, either as an insurance or surety company, USF & G is required to obtain a certificate of authority from the Insurance Commissioner as a condition of transacting business in Pennsylvania.[10]

Next, it is clear that the specific provisions of title 40 as to insurance and bonding companies cannot be reconciled with the provisions of title 15 dealing with foreign corporations generally. Pa.Stat.Ann. tit. 40, § 466 (Purdon Supp.1982) states in its entirety: "[i]t shall be lawful for *any* insurance company to maintain and defend judicial proceedings." (emphasis supplied). Thus, even without a title 15 certificate of authority, any company subject to title 40, dealing generally with insurance, has the capacity to maintain a lawsuit in Pennsylvania. Moreover, specific monetary penalties are levied against insurance or surety companies for transacting business in Pennsylvania without a certificate of authority. Pa.Stat.Ann. tit. 40, § 47 (Purdon Supp. 1982). Contrariwise, under title 15, a for-

eign corporation without a certificate of authority cannot "maintain any action in any court of ... [the] Commonwealth." Pa.Stat.Ann. tit. 15, § 2014 A (Purdon 1967). To hold that USF & G is required to obtain certificates of authority from both the Insurance Commissioner and the Department of State, would subject USF & G to double penalties and conflict with the provisions of Pa.Stat.Ann. tit. 40, § 466 allowing any insurance or surety company to maintain suit in Pennsylvania regardless of certificate of authority. To apply both titles 15 and 40 to insurance and surety companies would impose a sanction against those companies not set forth by the Legislature. Thus, the provisions of these titles are irreconcilable in this respect and accordingly, because title 40 more specifically is addressed to companies doing business similar to that of USF & G, I conclude USF & G need only comply with the requirements of title 40. Therefore, DiMassa's contention regarding lack of capacity is without merit.

*Conclusion*

For the reasons stated above, I conclude this suit is within the court's subject matter jurisdiction and USF & G has the capacity to maintain suit in Pennsylvania. Accordingly, with exception of DiMassa's motions to amend which are referred to in footnote 3, *supra,* his remaining motions must be denied.

---

**10.** Whichever statute is applicable is unimportant because both fall within title 40 governing insurance.