461 F.2d 1140
 QUAKER STATE DYEING & FINISHING CO., Inc., and John Realty
Co., Inc., Appellant in No. 71-1501,
v.
ITT TERRYPHONE CORPORATION and International Telephone and
Telegraph Corporation.
Appeal of JOHN REALTY CO., Inc., in No. 71-1502.
 Nos. 71-1501, 71-1502.
 United States Court of Appeals,
Third Circuit.
 Argued April 14, 1972.
Decided June 1, 1972.
 
 Stephen A. Cozen, Orlofsky, Cozen & Begier, Philadelphia, Pa., for appellants.
 Lynn L. Detweiler, Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellees.
 Before McLAUGHLIN, ALDISERT and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This action concerns the liability of ITT Terryphone Corporation (hereinafter, Terryphone) for both common law negligence, and for strict liability in tort as the manufacturer of a modular control system which allegedly caused a fire in appellant Quaker State's plant. The fire was said to have originated in the system which had been manufactured by appellee Terryphone and installed in appellant's plant by appellee and resulted in almost $350,000 damages. ITT was joined in the action since Terryphone was its wholly owned and closely run subsidiary.
 
 
 2
 The instant appeal is taken from an order of the district court granting the motion of Terryphone to dismiss the action for lack of diversity jurisdiction. The question here presented is then, whether or not the finding that no true diversity existed, was proper.
 
 
 3
 To meet the jurisdictional requirements of the Federal courts in an action such as this, the diversity must be complete. That is, no plaintiff can be a citizen of the same state as any of the defendants. For this reason our problem is whether or not Terryphone was a citizen of Pennsylvania at the time of the commencement of the action. If Terryphone was so a citizen of Pennsylvania, which appellant Quaker State Co. also is, no complete diversity would exist.
 
 
 4
 The jurisdictional statute, 28 U.S.C.A. Sec. 1332(c) states "For the purposes of this section * * * a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has 'its principal place of business."' It follows that the determination of Terryphone's "principal place of business" is of primary importance.
 
 
 5
 Appellants assert that perhaps the principal place of business of ITT should be the pertinent factor or standard, relying on the assumption that Terryphone is really an agent of ITT or even that they should be deemed one entity. However, "a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." 1 Moore's Fed.Practice 717.10, Sec. 0.77 [1.-2]. Appellants have attempted to show an integral relationship between parent and subsidiary here, such as to deprive them of the benefit of separate entity construction. However, the case law strongly shows that "where the corporate separation between a parent and subsidiary, 'though perhaps merely formal,' is 'real' and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise." Lurie Co. v. Loew's San Francisco Hotel Corp., 315 F.Supp. 405, 410 (N.D.Cal., 1970); Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). In the situation before us, although there is much interworking between ITT and Terryphone, the latter beyond doubt maintains its separate corporate identity. Corporate books are separately kept and all transactions between the two are represented by appropriate book entries which allows Terryphone to be accepted as having its own "principal place of business."
 
 
 6
 The establishment of the location of Terryphone's "principal place of business" is appellants' task. "Since plaintiff invoked diversity jurisdiction, the burden is upon it to prove all the facts by which it could be sustained." McSparran v. Weist, 402 F.2d 867, 875 (3 Cir. 1968). Quaker State must show that Terryphone was not a citizen of Pennsylvania. That issue is factual, upon which all relevant evidence must be considered. The dispositive criteria are soundly stated in Kelly v. United States Steel Corp., 284 F.2d 850 (3 Cir. 1960) where the court emphasized that there is no single, simple test. See also Judge Gibbons recent opinion in Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320 (3 Cir. 1972). Appellants attempt to distinguish Kelly because there the principal place of business determination was made for a parent corporation and not a wholly owned subsidiary. However, it seems obvious that these analytical tests are to be applied to any corporation in question regardless of its ownership makeup. Relying on Lurie and Cannon, supra, we know that Terryphone's distinct principal place of business is to be determined. The most significant factor upon which Kelly depends is the headquarters of the day to day corporate activities and management decisions. It also attaches value to secondary considerations which include where the Board decisions concerning overall corporate functions are reached, and also where a number of the basic corporate functions are maintained. (e. g. pension plans, insurance, loans.)
 
 
 7
 Some of the facts upon which the district court relied in granting appellees' motion to dismiss are contained in a supplemental affidavit submitted by Mr. Eaton, one of the officers and directors of Terryphone. Appellants contested the use of this affidavit, claiming it conclusory, self-serving, and contradictory to earlier sworn testimony. The district judge accepted it as fact and so treated it. Appellants designate this as "clear error" on the judge's part.
 
 
 8
 A closer look at appellees' supplemental affidavit (105a-109a) will serve to settle this question. The difference between a conclusion and a fact according to strict dictionary terminology is that a conclusion is a thing believed in consequence of investigation or reasoning (that is, an opinion derived from or founded on other factors). A fact, is the statement of a thing done or existing and alleged to be real (a personal knowledge of absolute elements). If one were to have a first hand knowledge of a thing as it presently appears to exist, he would have knowledge of that as a fact. The statements made in this supplemental affidavit by Mr. Eaton pertain to the general business structure, maintenance, and activities of Terryphone. Mr. Eaton is a vice-president, secretary and director of Terryphone. He has been with that company since ITT purchased it, some four years previous, and had worked with Terryphone for a number of years prior to that. He was in the full time employ of Terryphone and in charge of three of its departments (service, engineering, and quality control), and he handled the hiring and firing in those departments. What this presents is that Mr. Eaton had a first hand knowledge of the general business structures, maintenance, and activities of Terryphone. This is easily corroborated by the answers to questions presented to him by appellants in the interrogatories, which he aptly answered from his overall knowledge of the Terryphone structure, and which they accepted. We are satisfied, relying on the definitions, that these further statements concerning the business make-up and activities of Terryphone contained in the supplemental affidavit could in no way be regarded as conclusions, but must be looked on as statements of fact which should be followed unless contradicted. Statement #2 (P 105a) of the affidavit is one that might be called an opinion, but it was not taken as fact by the learned trial judge in his decision and therefore is of little consequence in this discussion. Appellants contend that said statements do contain elements contradictory to what was mentioned in the earlier sworn depositions and answers to interrogatories. Appellants, however, make no reference whatsoever to specific inconsistencies and a rereading of the transcript fails to disclose any of significance. There are some answers dealing with time and/or place which are somewhat vague, but this seems due, for the most part, to the nature of the questions called for by appellants' attorney, which invited such answers. These vague replies were in areas not essential to the issues involved in establishing Terryphone's principal place of business under the Kelly criteria and have little import in determining the acceptability of Eaton's affidavit. Therefore, the use of this supplemental affidavit in determining jurisdiction was not error to any degree and was necessarily and rightly used in obtaining a correct determination of this question.
 
 
 9
 The affidavit by Eaton contained a statement that "all officers of Terryphone, with the exception of William A. Underwood, assistant Secretary of Terryphone, John Seath, assistant Vice President of Terryphone, and William J. Donovan, assistant Secretary of Terryphone, reside in Pennsylvania and, with their staffs, transact the daily business of Terryphone at its office in Harrisburg, Pennsylvania. John Seath is a Vice President of ITT Corp. and Messrs. Underwood and Donovan are assistant Secretaries of ITT and have been named officers of Terryphone only for the purpose of signing State and Federal tax returns." (Emphasis supplied.) Combining this with what was presented in the interrogatory and deposition, it does appear that the important "daily business" element points to Terryphone as a Pennsylvania corporation. There is little evidence advanced by appellants to validate the proposition that the essential day to day activities are not conducted in Pennsylvania. There was nothing along that line brought out by appellants in contradiction to Eaton's above statement.
 
 
 10
 In addition to the Pennsylvania operation being the center of daily activities, other factors should be added which, though less important, point to Pennsylvania as Terryphone's true base. Almost 50 per cent of Terryphone's employees are employed in Pennsylvania, which is nearly eight times as many as in any other state, including New York. The dollar value of tangible personal property is about two and a half times as great in Pennsylvania as it is in any other state. Even the amount of income derived in Pennsylvania (15%) is close to 1 1/2 times as much as anywhere else. These items, along with what we have found to be the headquarters of day to day activity and management, lead to the sound conclusion that Pennsylvania is Terryphone's principal place of business.
 
 
 11
 Appellants have not shown evidence sufficient to meet their burden of proof through the interrogatory or otherwise. It has referred to some activities of Terryphone which are conducted in New York through, or with the aid of ITT's facilities, but these do not pertain to daily activities which Kelly has found vital. Pension and insurance plans, loans, weekly reports, and technical assistance were said to be linked to New York, but these are fairly more than counterbalanced by Kelly's "daily activities" or "place of operations" considerations. The place of Board of Directors meetings and the residence of the Board members, which are factors that appellants seem to value highly, in the light of the questions in the interrogatory, have little impact under Kelly wherein the court discussed what an inconsequential matter board meetings could be. There it is noted how directors could select some resort city for their meeting as easily as the home of the industry and with no practical effect. As Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490, 492 (S.D.N.Y. 1963) indicated, "there is much in the legislative history of Section 1332(c) which makes it necessary to regard the locus of corporate operations as a more important factor than the locus of overall policy direction or control in determining the 'principal place of business' of a corporation." Despite appellants' theory of this case as set out in the brief, it is evident that it does follow the Kelly formula which lends no strength to the factors that appellants assert called for a finding in their favor.
 
 
 12
 Appellants cite technical training and finances as coming from New York and suggesting that the daily operations were there centered. Once again, having in mind that the business of Terryphone was "to assemble internal communications equipment, and its leasing, installing and maintaining" (P. 16a), it is obvious from the available evidence that the activities surrounding those procedures are here deeply fundamental, and, as noted previously, those essential day to day activities and decisions concerning assembly, leasing, installation and maintenance were transacted in Pennsylvania.
 
 
 13
 As we see it, on the face of the record, the allowance of the Eaton evidence was certainly not erroneous. The dismissal for lack of jurisdiction was proper, because on evidence presented, Terryphone was a Pennsylvania citizen. Since Terryphone is held to be a citizen of Pennsylvania, no complete diversity exists between the parties.
 
 
 14
 The judgment of the district court will be affirmed.