**WHEELABRATOR FRACKVILLE ENERGY COMPANY, INC., Plaintiff,**

v.

**MOREA CULM SERVICES, INC., Morea Cogen, Inc., and Pagnotti Enterprises, Inc., Defendants.**

**Civ. A. No. 90–2962.**

United States District Court, E.D. Pennsylvania.

June 6, 1990.

Richard C. Rizzo, Philadelphia, Pa., for plaintiff.

John G. Whelley, Jr., Wilkes–Barre, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff Wheelabrator Frackville Energy Company, Inc. ("plaintiff") commenced this

civil action against defendants [1] based upon diversity of citizenship. *See* Plaintiff's Complaint at ¶ 5. Specifically, plaintiff alleges that it is a citizen of Delaware and New Hampshire and all defendants are citizens of Pennsylvania. *Id.* at ¶¶ 1–4. Defendants moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction alleging that plaintiff's principal place of business is Pennsylvania instead of New Hampshire. Determining that this court has subject matter jurisdiction under 28 U.S.C. § 1332 after a hearing held on June 4, 1990, I denied defendants' motion. I write now to explain fully the reasons for my decision.

## I.

Because the sole issue to be resolved by the instant motion is limited to the location of plaintiff's principal place of business, I will only briefly outline the facts of this case.

The dispute between the parties involves a complex commercial transaction governed by approximately thirty different contracts affecting the construction and operation of an anthracite culm waste-fueled steam-electric power cogeneration facility ("the Facility") near Frackville in Schuylkill County, Pennsylvania. The Facility is located on property owned by Morea Cogen and leased to plaintiff. By virtue of its operations, plaintiff provides steam power to the State Correctional Institute at Frackville ("SCI at Frackville") and electric power to Pennsylvania Power and Light Company ("PP & L"). Pursuant to other agreements, Morea Culm and Morea Cogen were to: (1) provide plaintiff with access to dedicated culm sites; (2) transport the culm to a blending plant for processing; (3) process the culm waste to meet contractual specifications; (4) supply the Facility with a sufficient quantity of "acceptable" culm; and

(5) dispose of the waste after the burning process in the Facility. For reasons not relevant to this motion, defendants discontinued providing the services required under the contracts and plaintiff initiated this action.

In respect to the jurisdictional issue, I make the following findings of fact: [2]

1. Plaintiff, incorporated in Delaware, is a wholly owned subsidiary of Wheelabrator Technologies, Inc., a Delaware Corporation. *See* Joint Stipulation of Fact at ¶¶ 1–2. All of plaintiff's operating revenue is derived from its sole operating plant, the Facility, located in Pennsylvania. *See* Haak Dep. at 51, 54, and 63.

2. Except for the electricity used in the Facility, all of the electricity and steam produced by the Facility is sold to plaintiff's only two customers: PP & L and SCI at Frackville. *Id.* at 62; *see also* Hudnet Dep. at 33.

3. In the contracts which constitute the subject matter of this action, the term "Operator" is defined as "Signal Energy Frackville Company Inc., a Delaware corporation having its principal office at Liberty Lane, Hampton, New Hampshire 03842, and its successors and assigns." [3] *See* Schedule X to Plaintiff's Exhibit 1. All contracts relating to this commercial transaction utilize the foregoing definition of Operator, and other documents prepared by plaintiff list Hampton, New Hampshire as the location of its principal office. *See* Plaintiff's Exhibit 43. Other documents require that written notices, requests, demands, and other communications be sent to plaintiff's general counsel, an officer of plaintiff, at plaintiff's address in New Hampshire. *See* Plaintiff's Exhibits 34–35. In fact, defendants' notice that they would "cease providing the material and removing the ashe, etc. as contemplated in and pursuant to the

---

1. The defendants are Morea Culm Services, Inc. ("Morea Culm"), Morea Cogen, Inc. ("Morea Cogen"), and Pagnotti Enterprises, Inc. ("Pagnotti").

2. I note that the facts relevant to Wheelabrator's principal place of business are not in material dispute. The record before me includes the relevant portions of the deposition testimony of

Richard S. Haak, George Delarche, George Hudnet, and Christopher Sauer. In addition, the record includes various documents admitted into evidence at the hearing on defendants' motion to dismiss for lack of subject matter jurisdiction.

3. Signal Energy Frackville Company is plaintiff's predecessor corporation.

Omnibus Agreement" was mailed to plaintiff's address in New Hampshire. *See* Plaintiff's Exhibit 56. Finally, important correspondence by plaintiff to defendants originated in plaintiff's New Hampshire offices. *See* Plaintiff's Exhibits 45–46.

4. Plaintiff's highest level of employee located at the Facility and in Pennsylvania is the plant manager, George Delarche. As plant manager, Delarche is responsible only for implementing the corporate plan, *see infra* at ¶ 8, and supervising routine production related activities at the Facility. All other discretionary decisions are made by personnel outside of Pennsylvania. *See* Haak Dep. at 83–89; Delarche Dep. at 27–29, 38–39. All of plaintiff's full-time employees, totalling only 36 individuals, work at the Facility and reside in Pennsylvania. *See* Delarche Dep. at 57–58.

5. All of plaintiff's officers and directors work and reside outside of Pennsylvania, primarily in New Hampshire. None of plaintiff's officers or directors maintains a business office or resides in Pennsylvania. *See* Haak Dep. at 21–22, 33–34, 83.

6. Meetings of the Board of Directors are held in New Hampshire, and the corporate minute books are kept in New Hampshire. *Id.* at 22, 96.

7. All corporate books and records are kept in New Hampshire. *Id.* at 20–21.

8. The corporate plan and budget are established by plaintiff's officers in New Hampshire. The corporate plan and budget dictate the boundaries within which the Facility's plant manager must operate the Facility and circumscribe the authority of Pennsylvania-based employees to make decisions affecting various items, including, but not limited to, operating expenditures, salaries, vacation time, and sick leave. *Id.* at 15, 56–57, 81–82, 92–3; *see also* Hudnet Dep. at 59–60.

9. Corporate personnel in New Hampshire make all investment and financing decisions in respect to plaintiff corporation. *See* Haak Dep. at 56, 82–83, 89–90.

10. The projected output level of the Facility and other policies related to operations of the plant are established by a regional manager located in Baltimore, Maryland. The regional manager reports directly to corporate officers in New Hampshire. *Id.* at 96; *see also* Hudnet Dep. at 59–61; Delarche Dep. at 51–52.

11. All corporate checks, other than those for payroll or petty cash, are signed in New Hampshire. *See* Haak Dep. at 89, 97. Plaintiff maintains payroll and petty cash accounts at Pennsylvania National Bank in Frackville, Pennsylvania. *Id.* at 64–65; *see also* Exhibits B and C of Defendants' Proposed Findings of Fact on Subject Matter Jurisdiction.

12. Officers located in New Hampshire must approve all capital expenditures. *See* Haak Dep. at 56–57, 92, 96. Decisions regarding routine purchasing of supplies and services are made at the regional headquarters outside of Pennsylvania. *Id.* at 50–51; *see also* Delarche Dep. at 60.

13. Except for routine purchase orders, all contracts, including contracts for the long-term supply of services and goods, must be approved and signed by officers in New Hampshire. Negotiations for such contracts are conducted by the regional manager in Maryland and/or officers from New Hampshire. Indeed, the contracts at issue in this action were negotiated and entered into by corporate officers located in New Hampshire. *See* Haak Dep. at 18, 57, 77, 92; *see also* Sauer Dep. at 12–13.

14. Aside from routine report filings under permits, all environmental and regulatory work is performed outside of Pennsylvania. *See* Haak Dep. at 56, 93. Legal advice is provided by personnel located in New Hampshire. No person employed by plaintiff in Pennsylvania is authorized to make decisions concerning legal matters. *Id.* at 74–5, 80, 82. In addition, technical issues, such as engineering specifications, are reviewed and approved by the engineering department operating from New Hampshire. *Id.* at 56, 93.

15. General liability and casualty insurance policies are procured in New Hampshire, and the premium checks are signed in New Hampshire. *Id.* at 94–95. All employee benefit plans, including health insurance, disability insurance, and pension and

retirement plans, are established and managed from New Hampshire. Again, all premium checks are signed in New Hampshire. *Id.* at 95–97.

15. Federal and state income tax returns are prepared and filed from New Hampshire. Plaintiff's 1988 Pennsylvania state tax return lists Danvers, Massachusetts[4] as the location of the company's corporate records and principal corporate office. *Id.* at 76, 81, 93–94. The outside auditing firm utilized by plaintiff, Arthur Anderson & Co., is located in New York. *Id.* at 90; *see also* Exhibit A to Defendants' Proposed Findings of Fact on Subject Matter Jurisdiction.

## II.

Federal Rule of Civil Procedure 12(h)(3) states

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Therefore, the issue of subject matter jurisdiction may be raised at any time during the litigation. *Murray v. Commercial Union Insurance Co.,* 782 F.2d 432, 433 (3d Cir.1986) (citing *Liberty Mutual Insurance Co.,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976)).

Section 1332(a) of Title 28 of the United States Code provides the district court with original jurisdiction in actions where the amount in controversy exceeds the sum of $50,000 and the citizenship of the parties is diverse. The jurisdictional requirements of federal courts require that no plaintiff can be a citizen of the same state as any of the defendants. *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.,* 461 F.2d 1140, 1141 (3d Cir.1972).

■ With respect to corporations, 28 U.S.C. § 1332(c) provides

> [f]or the purposes of this section … a corporation shall be deemed a citizen of any State by which it is incorporated and of the State where it has its principal place of business. …

A subsidiary corporation incorporated as a distinct entity from its parent has its own principal place of business. *Quaker State,* 461 F.2d at 1142.

The burden of proving jurisdiction lies with the plaintiff. *See Quaker State,* 461 F.2d at 1142–43; *McSparran v. Weist,* 402 F.2d 867, 875 (3d Cir.1968). The plaintiff must prove the jurisdictional allegations in the complaint by a fair preponderance of the evidence. *Holman v. Carpenter Technology Corp.,* 484 F.Supp. 406, 409 (E.D. Pa.1980); *Boysen v. Treadway Inn of Lake Harmony, Inc.,* 53 F.R.D. 96, 98 (E.D.Pa.1971).

The Third Circuit's decision in *Kelly v. United States Steel Corp.,* 284 F.2d 850 (3d Cir.1960), establishes the test to be applied for determining the principal place of business of a corporation. *See Holly Farms Corp. v. Taylor,* 722 F.Supp. 1152, 1157 (D.Del.1989). Foremost in the court's analysis in *Kelly* was a determination of the center of corporate activity and management or day-to-day activities. *Kelly,* 284 F.2d at 854 ("it is the activities rather than the occasional meeting of policy-making directors which indicate the principal place of business"). The court also found the following factors to be relevant, but of lesser importance: (1) location of physical plants; (2) location of assets; and (3) location of employees. *Id.* In its discussion, the Third Circuit also considered other factors to which it did not place great weight. For example, the court stated that the place of the meeting of the shareholders alone cannot be the principal place of business of a corporation. *Id.* at 852. Although, the situs of the board of director's meetings and financing decisions may be a factor in determining a corporation's principal place of business, this alone will ordinarily not suffice. *Id.* at 853–54.

■ In this case, I note that, while factors of lesser importance, *e.g.* location of physical plants, employees and assets, would support a finding that Pennsylvania is the principal place of business of plaintiff, plaintiff has clearly established that New Hampshire is the "headquarters of

---

**4.** Before moving to Hampton, New Hampshire, plaintiff was located in Danvers, Massachusetts.

day-to-day corporate activity and management." In fact, few, if any, management decisions are made in Pennsylvania. Plaintiff's employees in Pennsylvania are merely responsible for the implementation of policy established by corporate officers in New Hampshire. These employees, only 36 in number, lack any authority to make capital expenditures without approval from either the regional manager in Maryland and/or corporate officers in New Hampshire. Further, decisions pertaining to the level of operation of the Facility are made by officers in New Hampshire. The highest level management employee in Pennsylvania, the plant manager, is essentially a lower-level management employee, albeit of substantial importance to plaintiff's business, without any real authority to make important decisions concerning plaintiff's day-to-day corporate activities.

In addition, other factors support the conclusion that New Hamsphire, not Pennsylvania, is plaintiff's principal place of business. All financing decisions are made in New Hampshire. In fact, all checks, except payroll and petty cash checks, must be signed in New Hampshire. Various insurance policies and benefits plans were established by plaintiff in New Hampshire, and continue to be serviced in that State. All corporate books and records are kept in New Hampshire. On all documents, including the contracts at issue in this case, plaintiff's 1988 tax return filed with the Commonwealth of Pennsylvania, and mortgage and security interest papers, plaintiff identifies New Hampshire as the location of its principal offices or principal place of business. Important notices, such as notice of termination or repudiation of the instant contracts, are required to be sent to a representative of plaintiff in New Hampshire. Finally, plaintiff's legal counsel is located in New Hampshire.

Because plaintiff's operating plant and the business derived from the operation of that plant rests solely in Pennsylvania, defendants argue that the center of plaintiff's day-to-day corporate activity and management lies in Pennsylvania. The validity of such an argument is dispelled by a hypothetical posited by the Third Circuit in *Kel-*

*ly*. After rejecting the location of the meeting of the shareholders as a corporation's principal place of business, the court considered the following factual scenario:

One may also look to the place where physical activity is carried on. We can suppose a mining corporation where the actual digging of iron ore is on the Mesabi Range in Minnesota, the corporation has a New Jersey charter but all the directive activity of the corporation is conducted at its office in Superior, Wisconsin. Should the state of digging be called the principal place of business when all contracts, sales and plans for expansion or contraction, the bank accounts and all the rest that make up this corporation's business activity take place in Wisconsin? In the absence of a simple single test we are forced to analyze our question further and endeavor to pick out as best we can the factor or combination of factors that seem to point to one place as the "principal" place of business.

*Kelly*, 284 F.2d at 853.

Just as the Third Circuit in *Kelly* rejected the location of physical activity, without anything more, as the principal place of business of a corporation, I must reject such an argument. This is but one factor which must be considered by a court, and, as stated in *Kelly*, this factor is of "lesser importance." *Id.* at 854. A slight change to the hypothetical quoted above, demonstrates that the approach suggested by defendants is unworkable. Suppose, instead of all physical activity occurring in Minnesota, half of this hypothetical corporation's physical activity occurred in Minnesota and the other half occurred in Pennsylvania. Absent consideration of other salient factors, a court would be without a basis from which to select one jurisdiction where physical activity occurred over another.

### III.

After considering all factors pertinent to jurisdiction and for the reasons stated above, I conclude that plaintiff's principal place of business is New Hampshire, and that I have jurisdiction over this civil action

pursuant to 28 U.S.C. § 1332 as the parties are diverse in citizenship and the amount in controversy exceeds $50,000.[5]

5. Defendants do not dispute that plaintiffs can satisfy the amount of controversy requirement of Section 1332.