Garabet and Isabel APOIAN, Plaintiffs,

v.

AMERICAN HOME PRODUCTS, CORP. and Wyeth–Ayerst Laboratories, Defendants.

No. CIV. A. 00–3083.

United States District Court, E.D. Pennsylvania.

Aug. 11, 2000.

Lisa R. Schwartz, Philadelphia, PA, for Plaintiffs.

Reetu Dandora, Philadelphia, PA, for Defendants.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Currently pending before the Court is the motion of plaintiff for remand (Document No. 4), and the response of the defendants thereto. For the following reasons, the motion will be granted.

### I. BACKGROUND

Plaintiffs Garabet and Isabel Apoian commenced this action in the Court of Common Pleas of Philadelphia County by Praecipe for Writ of Summons on February 8, 2000. Although the Writ of Summons disclosed that the Apoians were Pennsylvania residents, it did not disclose the amount in controversy. Thereafter, in a Case Management Conference Memorandum submitted to the Court of Common Pleas, the Apoians disclosed that they were demanding in excess of $75,000, exclusive of interest and costs. The defendants assert that they are Delaware corporations with their principal place of business in New Jersey and subsequently filed a timely Notice of Removal on June 16, 2000 pursuant to 28 U.S.C. § 1441(a).

In response, this Court Ordered that the plaintiffs file their complaint with the Clerk of Court.

Pursuant to the Order of this Court, the plaintiffs filed their complaint on July 12, 2000. It was accompanied, however, with a motion to remand in which plaintiffs argue that this court lacks subject matter jurisdiction because the parties are not diverse.

### II. STANDARD

Under the general federal removal statutes, an action brought in state court may be removed by the defendant to the federal district court encompassing the state court if that federal district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a). With respect to both sections 1332 and 1441, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c).

█ Once a case is removed, the federal court may remand if there has been a procedural defect in removal. *See* 28 U.S.C. § 1447(c). If the court determines that it lacks federal subject matter jurisdiction, then remand is mandatory. *Id.; Kimmel v. DeGasperi,* 2000 WL 420639, at *1 (E.D.Pa. Apr.7, 2000). When a case is removed from a state court, the removing party bears the burden of proving the existence of federal subject matter jurisdiction. *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1011 (3d Cir.1987), *cert. dismissed,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Moore v. DeBiase,* 766 F.Supp. 1311, 1315 (D.N.J.1991); *Mountain Ridge*

*State Bank v. Investor Funding Corp.,* 763 F.Supp. 1282, 1288 (D.N.J.1991). Finally, "[r]emoval statutes 'are to be strictly construed against removal and all doubts resolved in favor of remand.'" *Boyer,* 913 F.2d at 111 (quoting *Steel Valley,* 809 F.2d at 1010); *see Moore,* 766 F.Supp. at 1314; *Mountain Ridge,* 763 F.Supp. at 1288.

## III. ANALYSIS [1]

■ The defendants contend that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the defendants are Delaware corporations with their principal places of business in New Jersey and it is undisputed that the amount in controversy exceeds $75,000.00, exclusive interest and costs. Plaintiffs assert, however, that this Court lacks jurisdiction because defendant Wyeth–Ayerst Laboratories has its principal place of business in Pennsylvania and, therefore, complete diversity is lacking.

In so doing, plaintiffs rely the voluntary and uncontested statement on the Wyeth–Ayerst Laboratories Web page that it is headquartered in Pennsylvania.[2] *See* htt p://www.ahp.com/wyeth_labs.htm ("Headquartered in St. Davids, Pennsylvania, U.S.A., the company employs approximately 15,000 people in its business operations."). Indeed, on the Wyeth–Ayerst Web page, Wyeth–Ayerst is a self described "major research-oriented enterprise" comprised of four entities, including Wyeth–Ayerst Laboratories and is "[h]eadquartered in suburban Philadel-

phia, Pennsylvania, U.S.A., employ[ing] more than 40,000 people worldwide...." *See* http://ahp.com/wyeth.htm.

■ The determination of a corporation's principal place of business for diversity purposes is governed by a "center of corporate activities" test and depends to varying degrees on several factors. *Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 291 (3d Cir.1998); *Kelly v. U.S. Steel Corp.,* 284 F.2d 850, 854 (3d Cir.1960). Under this test, it is the headquarters of a corporation's day-to-day corporate activity and management, rather than the occasional meeting of policymaking directors, which indicate the principal place of business. *Id.* Of less importance but also significant to the analysis are: (1) the location of the physical plants; (2) the location of assets; and (3) the location of employees. *Wheelabrator Frackville Energy Co. v. Morea Culm Servs., Inc.,* 741 F.Supp. 536, 539 (E.D.Pa.1990).

In *Wheelabrator,* the district court elaborated on factors useful in determining the situs of a corporation's principal place of business. 741 F.Supp. at 538–40. The *Wheelabrator* Court noted that "[a]lthough the situs of the board of director's meetings and financing decisions may be a factor in determining a corporation's principal place of business, this alone will ordinarily not suffice." *Id.* at 539. The *Wheelabrator* Court then took into account, among other things, that: (1) all the plaintiff's

---

1. Defendant argues that plaintiffs have waived any right to remand because they "voluntarily" invoked federal jurisdiction. This argument overlooks the fact that plaintiffs only filed their complaint in federal court pursuant to an Order of this Court and that, although "pleadings that contain unwarranted assertions as to matters bearing on jurisdiction reflect no great credit on the attorneys who drafted and filed them ..., the pleadings themselves have no intrinsic capacity either to establish or disestablish jurisdiction; it is axiomatic that a party may not confer or defeat jurisdiction by mere pleading." *Mennen,* 147 F.3d at 293. "Rather, subject matter jurisdiction depends upon facts of record, and when any question arises as to the existence of jurisdiction, a federal court is obligated to

make an independent determination of those facts." *Id.* at 294.

2. Defendants, in their response to paragraph 10 of the motion to remand, assert a blanket denial, contending that the Website speaks for itself and does not specifically refer to Wyeth–Ayerst Laboratories Company. Wyeth–Ayerst Laboratories does not, however, question the authenticity of the Web page nor does it explain the discrepancy between the information found on the Web page and its assertion that it is headquartered and has its principal place of business in Madison, New Jersey. Thus, the information from the Web page is uncontroverted.

officers and directors worked and resided primarily in New Hampshire and that none of the officers or directors maintained a business office or resided in Pennsylvania; (2) the Board of Director meetings were held in New Hampshire and the corporate minute books were kept in New Hampshire; (3) all corporate books and records were kept in New Hampshire; (4) almost all management decisions were made in New Hampshire and plaintiff's Pennsylvania employees merely implemented policies established in New Hampshire; (5) corporate personnel in New Hampshire made all investment and financing decisions; (6) all corporate checks, other than those for payroll or petty cash, were signed in New Hampshire; (7) officers in New Hampshire were required to approve all capital expenditures; (8) general liability and casualty insurance policies were procured in New Hampshire and all premium checks were signed in New Hampshire; (9) all employee benefit plans, including health insurance, disability insurance and pension and retirement plans are established and maintained; and (10) federal and state income tax returns were prepared and filed in New Hampshire. 741 F.Supp. at 538–39.

Based upon the factors articulated in *Wheelabrator*, the defendants argue that the following factors are significant in determining Wyeth–Ayerst Laboratories principal place of business: (1) that various executive officers, including the president, some vice presidents and the treasurer "work" in New Jersey; (2) lower level employees "are located" in Pennsylvania; (3) officers make all important managerial and financial decisions in New Jersey; (4) the articles of incorporation and the minutes of the annual board of directors meeting are kept in New Jersey; (5) all insurance documents and records relating to Wyeth–Ayerst Laboratories are kept in New Jersey; (6) all insurance contracts are negotiated with a New Jersey company; (7) Wyeth–Ayerst Laboratories does not own any real property; (8) all financial decisions are made in New Jer-

sey; and (9) all checks, except payroll and petty cash, must be signed in Madison, New Jersey. (*See* Memorandum of Law in Support of the Response and Opposition of Defendants American Home Products Corporation and Wyeth–Ayerst Laboratories Company to Plaintiffs' Motion to Remand ("Def.Mem.") at 6–7). The factual basis for these contentions is purportedly to be found in affidavits submitted on behalf of Wyeth–Ayerst Laboratories (Def. Mem., Exh. B & C).

There are several problems with the defendants' argument; not the least of which is that many of the factual representations and arguments made by counsel are not supported by the affidavits which form the basis of its argument. First, the Court fails to see the relevance, standing alone and without other relevant information concerning insurance, that the situs of the company with which Wyeth–Ayerst Laboratories negotiates its insurance contracts is in New Jersey. Second, although some of the facts established by Wyeth–Ayerst Laboratories are relevant to determining the location of a corporation principal place of business, such as where some records are kept, on the whole the evidence produced by Wyeth–Ayerst Laboratories pales in comparison to other factors which are indicative of a corporation's principal place of business and discussed in *Wheelabrator*. For instance, where insurance records are kept is far less suggestive of a corporation's principal place of business than where employee benefit plans are established and managed. *See Wheelabrator*, 741 F.Supp. at 538. Similarly, where the articles of incorporation and minutes of annual board of director's meeting are kept is a less significant factor in determining a corporation's principal place of business than where board of directors meetings are actually held and where *all* other corporate books and records, including the minutes of the board of directors meetings, are kept. *Id.*. Third, although Wyeth–Ayerst Laboratories has submitted an affidavit, attesting to the fact

that several executives "work" in New Jersey, there is no indication, other than their titles,· where and how management decisions are made or whether and to what extent these executives also "work" in Pennsylvania. Unlike defendant American Home Products which has submitted an affidavit attesting that a "substantial majority" of remaining principal corporate officers "work" in New Jersey, Wyeth–Ayerst Laboratories makes no such verification.

The center of corporate activity analysis necessarily requires some comparison as between the possible centers of corporate activity. *See Eyal Lior v. Sit,* 913 F.Supp. 868, 875–76 (D.N.J.1996) (court considered, among other things, relative distribution of corporate officers between Connecticut and New Jersey); *Wheelabrator,* 741 F.Supp. at 538–40 (comparing operations in Pennsylvania to operations in New Hampshire). Here, the affidavits submitted on behalf of Wyeth–Ayerst Laboratories are devoid of any information regarding the operations of Wyeth–Ayerst Laboratories Pennsylvania facility. Thus, unlike *Wheelabrator,* where the court determined that *none* of the executives lived or maintained offices in Pennsylvania, here the Court cannot determine whether other executives maintain offices or make decisions at the Pennsylvania office or that the executives that "work" in New Jersey do not work or maintain offices in Pennsylvania. There is simply no information before the Court as to where these executives maintain their offices and staff or make management decisions.

Finally, and perhaps most disturbing, is the representation by counsel for the defendants, that "[a]ll financial decisions are made in Madison, NJ" and "[o]fficers make all important managerial and financial decisions in the Madison, NJ office." (Def. Mem. at 7). In making these statements of fact, counsel cites to the affidavits submitted on behalf of Wyeth–Ayerst Laboratories. Indeed, counsel argues that, based upon the information provided in the attached affidavits, the "highest level executives" of Wyeth–Ayerst Laboratories "work in New Jersey" and that "[t]hese high-level executives are responsible for key policy and financial decisions regarding the company's day-to-day activities and management" (Def. Mem. at 7).

In so doing, counsel patently mischaracterizes the content of the affidavits to this Court. For instance, the affidavit on behalf of Wyeth–Ayerst Laboratories of John M. Alivernini, Assistant Secretary of American Home Products and Wyeth–Ayerst Laboratories only states that "[a]ll financial decisions pertaining to American Home Products Corporation are made in Madison, New Jersey." (*Id.* at Exh. C, ¶ 6). There is no verification as to where financial decisions pertaining to Wyeth–Ayerst Laboratories are made. (*See* Def. Mem., Exh. C). In addition, there is nothing in the affidavits which speak to how or where managerial decisions are made. Consequently, it would be pure conjecture on the part of the Court to find that financial and managerial decisions are made in New Jersey. Furthermore, there is nothing in the affidavits to support counsel's representation that "[l]ower level officers such as the Comptroler, the Assistant Comptroller and two Assistant Secretaries are located in St. Davids, PA." (*Compare* Def. Mem. at 7 *with* Def. Mem., Exh. B & C). Thus, other than the titles of a few of executives who "work" in New Jersey, there is nothing in the affidavits to support the contention of counsel that only lower-level employees, who merely implement policies, "are located" in Saint Davids, Pennsylvania and that "[o]fficers make all important managerial and financial decisions in the Madison, NJ office." (Def. Mem. at 7).

Moreover, the affidavits submitted on behalf of Wyeth–Ayerst Laboratories differ in significant respects from the affidavits submitted on behalf of American Home Products Corporation. The affidavits also have the appearance of being carefully crafted by counsel to directly ad-

dress issues that courts have considered in determining a corporation's principal place of business. Thus, I do not find omissions or ambiguities insignificant. In addition to the inadequacy of the affidavits with respect to the executive officers, the affidavits do not address easily attainable and probative information about the situs of a corporation's principal place of business such as: where employee benefit plans are established and administered; where corporate books and records are kept (and not just articles of incorporation, minutes of annual board meetings and insurance records); what types of important financial, legal and managerial decisions are made as well as where, how, and by whom such decisions are made; or where tax returns were prepared and filed. *See Wheelabrator*, 741 F.Supp. at 538–39. The insufficiency of the affidavits is underscored by the fact that the Wyeth–Ayerst Laboratories is in possession of *all* the relevant facts.

In sum, plaintiffs have presented evidence that Wyeth–Ayerst Laboratories has 15,000 or more employees in its business operations and maintains its headquarters in Saint Davids, Pennsylvania. (Plaintiffs' Motion to Remand, Exh. B). Despite the fact that access to the pertinent facts is completely within the control of Wyeth–Ayerst Laboratories, it has failed to produce any information regarding its Pennsylvania facility, such as which, if any, executives have offices and staff in Pennsylvania or how it operates a multi-thousand member workforce in Pennsylvania with no management or financial decision-makers in Pennsylvania. Notwithstanding the mischaracterizations of the attached affidavits or misleading arguments made by defense counsel, the affidavits submitted by Wyeth–Ayerst Laboratories are woefully inadequate to carry its burden of proof in establishing that its principal place of business is New Jersey and that removal was proper.[3] Because defendants

have failed to meet their burden of proving complete diversity between the plaintiffs and all defendants, the Court lacks subject matter jurisdiction and this matter will be returned to the Court of Common Pleas.

## IV. ATTORNEYS' FEES AND OTHER COSTS

The removal statute provides that a court may award attorneys' fees and other costs when it remands a case based on a procedural defect as well as when the court remands for lack of jurisdiction. 28 U.S.C. § 1447(c). The award of costs under § 1447(c) is discretionary. A "district court may require the payment of fees and costs by a party which removed a case which the court then remanded, even though the party removing the case did not act in bad faith." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). By separate Order, defendants will be Ordered to show cause why attorneys' fees and costs should not be awarded.

## V. SANCTIONS

This Court has the inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it. *See, e.g., Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 374, 19 L.Ed. 214 (1868) ("We do not doubt the power of the court to punish attorneys as officers of the same, for misbehavior in the practice of the profession. This power has been recognized and enforced ever since the organization of the courts, and the admission of attorneys to practice therein."); *Castillo v. St. Paul Fire & Marine Ins. Co.*, 828 F.Supp. 594, 598 (C.D.Ill.1992). The Federal Rules of Civil Procedure also empower this Court to sanction a party who deliberately misrepresents material facts to the Court. Fed. R.Civ.P. 11; *In re Henlar, Ltd.*, 1997 WL 4567, at * 4 (E.D.La. Jan.6, 1997). Finally, a court may sanction an attorney pursuant

---

**3.** Because one non-diverse defendant destroys complete diversity, the Court need not consider whether defendant American Home Prod-

ucts has carried its burden of establishing that its principal place of business is in New Jersey and not in Pennsylvania.

to 28 U.S.C. § 1927 for conduct which are tantamount to willful bad faith. *Loftus v. SEPTA*, 8 F.Supp.2d 458, 461 (E.D.Pa. 1998), *aff'd*, 187 F.3d 626 (1999); *Baker Indus. v. Cerberus Ltd.*, 764 F.2d 204, 209 (3d Cir.1985). Prior to the imposition of sanctions, however, an attorney is entitled to notice and an opportunity to be heard. *Prosser v. Prosser*, 186 F.3d 403, 406 (3d Cir.1999).

This case was improperly removed and consequently must be remanded. I am most disturbed, however, with the patent mischaracterizations of the attached affidavits made to this Court in the defendants' memorandum of law in opposition to the plaintiffs' motion to remand. At first blush the brief is persuasive, but upon closer review of the evidence underpinning the defendants' argument, it is apparent that the brief is persuasive only because it misrepresents the factual basis for their argument. For instance, nothing in the affidavits supports the defendants contentions—made with citations to the affidavits—that all financial and management decisions of Wyeth–Ayerst Laboratories are made in New Jersey. The affidavits are silent as to where and how management decisions are made and only speak to where the financial decisions of American Home Products are made. Moreover, defendants specifically claim—again with citation to the affidavits—that certain employees "are located" in Pennsylvania. The affidavits, however, are silent as to the staffing of what it describes on its Website as its "headquarters" in Pennsylvania.

It also cannot be ignored that the evidentiary record with respect to Wyeth–Ayerst Laboratories consists of two short affidavits produced by the company itself (there being in sum fifteen paragraphs, all but two of which are one sentence long). It appears therefore that the misrepresentations by counsel are either an egregious attempt to mislead the Court or a gross oversight and lack of reasonable inquiry under the circumstances into the evidentiary support for the factual contentions made by counsel in the memorandum of law. Whether or not counsel believe their "factual" representations to be true, when counsel cite to the record in making definitive and significant factual representations and the record does not contain the factual basis for its contentions, then counsel must account to the Court for misrepresenting the factual record. In sum, the memorandum of law submitted by counsel for the Wyeth–Ayerst Laboratories offends this Court's notion of proper advocacy and an attorney's duty of candor to the Court. Accordingly, this shall serve as notice to Douglas Y. Christian, Esquire, and Reetu Dandora, Esquire, as signatories to the memorandum of law, that this Court is considering the imposition of monetary and/or disciplinary sanctions. By separate Order, this Court will schedule as hearing to show cause why this Court shall not impose sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 or its inherent powers for patently misrepresenting the content of the affidavits attached to defendants' memorandum of law in opposition to the plaintiffs' motion to remand (Document No. 8) and consequently making improper arguments to this Court in the memorandum of law.

## VI. CONCLUSION

For the foregoing reasons, I will grant the motion.