**Garabet and Isabel APOIAN, Plaintiffs,**

**v.**

**AMERICAN HOME PRODUCTS CORPORATION and Wyeth–Ayerst Laboratories Company, Defendants.**

**No. CIV.A. 00–3083.**

United States District Court,
E.D. Pennsylvania.

Aug. 31, 2000.

Lisa R. Schwartz, Philadelphia, PA, for Plaintiff.

Michael T. Scott, Philadelphia, PA, for Defendant.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

It has been said that "[a] lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice. He who would follow that calling must conform to those standards." *In re Sawyer,* 360 U.S. 622, 646, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring). It is those standards that concern this Court today, as I consider the merits of the order to show cause why this Court should not impose sanctions upon counsel for defendants in this action, Douglas Y. Christian and Reetu Dandora. A hearing was held in open court on August 29, 2000, where Mr. Christian and Ms. Dandora testified and prior to which a detailed pre-hearing memorandum with attached affidavits was filed (Document No. 17).

### Background

Mr. Christian, a 15–year member of the Pennsylvania bar and a partner with the law firm of Reed Smith Shaw & McClay, L.L.P. ("Reed Smith"), and Ms. Dandora, a second-year associate at Reed Smith, were counsel of record for defendants American Home Products Corporation ("American Home Products") and Wyeth–Ayerst Laboratories Company ("WAL-CO") in an action brought by plaintiffs Garabet and Isabel Apoian. Plaintiffs' complaint alleged that Garabet Apoian suffered injury and illness as a result of his use of Duract, a prescription drug manufactured, marketed, and sold by American

Home Products and WALCO. The action originally was brought in the Court of Common Pleas of Philadelphia County and later was removed by American Home Products and WALCO to this Court (Document No. 1). Plaintiffs filed a motion to remand (Document No. 4), and American Home Products and WALCO filed a response opposing remand (Document No. 9) ("response"). It is the response of American Home Products and WALCO to the motion to remand that is the subject of this Court's concern today.

The gravamen of the response and the supporting memorandum was that defendants American Home Products and WALCO were incorporated in Delaware and had their principal place of business in New Jersey. Because plaintiffs were Pennsylvania residents, defendants contended that complete diversity existed and jurisdiction was proper in this Court, as the amount in controversy was alleged to be in excess of $75,000. *See* 28 U.S.C. § 1332. Upon a review of the memorandum in support of the response, the Court noticed and was troubled by the lack of factual support for a number of the assertions contained in the memorandum and facial discrepancies between factual assertions in the memorandum and the supporting affidavits. The Court set forth its concerns in its August 11, 2000 ruling on the motion to remand, *see Apoian v. American Home Products Corp.*, 108 F.Supp.2d 454 (E.D.Pa.2000) (Document No. 10),[1] and ordered Mr. Christian and Ms. Dandora to show cause why they should not be sanctioned for "misrepresenting the content of the affidavits attached to said memorandum of law and consequently making improper arguments to this Court in the memorandum of law." (Order, Document No. 11, August 11, 2000).

At the heart of the Court's concerns are the efforts of Mr. Christian and Ms. Dandora in the response memorandum to persuade the Court that WALCO has its principal place of business in New Jersey. The response memorandum contained citation to appropriate case authority and a numbered list of evidentiary factors intended to support a finding that the center of corporate activity, and therefore the principal place of business, of WALCO was New Jersey. (Memorandum of Law in Support of Defendants' Response to Motion for Remand, at 6–7.) ("Response"). At the end of the list was a "See" citation referencing the four affidavits attached to the response, suggesting that each of the factual assertions was directly stated in or clearly supported by the affidavits. *See The Bluebook: A Uniform System of Citation*, § 1.2, p. 22 (16th ed.1996). Mr. Christian agreed in his testimony that the listing of facts was intended to be based on the affidavits, and he expected the Court to rely on the affidavits. (Testimony of Douglas Y. Christian.)

Included in that list were the following factual assertions:

(5) Lower-level officers such as the Comptroller, the Assistant Comptroller and the two Assistant Secretaries are located in St. Davids, PA;

(6) Officers make all important managerial and financial decisions in the Madison, NJ office;

---

1. In that ruling, the Court determined that defendants had failed to meet their burden of proving that WALCO had its principal place of business in New Jersey, and thus granted the motion to remand. This Court now retains jurisdiction only over matters ancillary to the remand ruling, including the issues of sanctions and the possible award of attorneys' fees. *See Mints v. Educational Testing Service*, 99 F.3d 1253, 1258 (3d. Cir.1996) (court may consider award of attorneys fees after a case has been remanded) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (court may impose sanctions after plaintiff voluntarily dismisses a case because "it is well established that a federal court may consider collateral issues after an action is no longer pending"); *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 445 (9th Cir.1992) (court may consider awarding attorneys fees under 28 U.S.C. § 1447(c) after case has been remanded)).

(11) All financial decisions are made in Madison, NJ (indeed, all checks, except payroll checks, must be signed in Madison, NJ).

(Response, at 7.) The problem was that none of the above factual assertions were included in the affidavits. None of the affidavits contained any information about the identity or activities of WALCO officers in St. Davids, Pennsylvania. Likewise, there was nothing in the affidavits concerning where the managerial decisions of WALCO are made, where financial decisions of WALCO are made, or where WALCO checks are signed; the only evidentiary support for where financial decisions are made and checks are signed was the second affidavit of John Alivernini, which stated that the financial decisions of *American Home Products* (not WALCO) were made in Madison, New Jersey.[2]

Compounding the problem was an expository paragraph of argument that followed the list which, obviously relying on the affidavits, made additional factual assertions concerning WALCO not supported by the affidavits or any other evidence then in the record, including the following:

— WALCO's headquarters of "day-to-day activity and corporate activity and management" is located in New Jersey;

— "high level executives [in New Jersey] are responsible for key policy and financial decisions regarding the company's day-to-day activities and management ..."

— "... as opposed to the lower-level employees in St. Davids, Pennsylvania who implement the policies;"

— "all corporate records ... are maintained in New Jersey;"

— "all checks but payroll checks are signed in New Jersey;"

— WALCO "distributed, marketed, and sold Duract in Pennsylvania...."

(Response, at 7.) Also troubling to the Court was the fact that plaintiffs had produced evidence in the form of web site representations from which it could be inferred (but not conclusively) that WALCO was headquartered in St. Davids, Pennsylvania. Defendants, who bore the burden of proof on remand, merely denied the plaintiffs' inferences from the web site and produced nothing to rebut plaintiffs' evidence and no evidence of the corporate activities of WALCO that in fact did take place in Pennsylvania, despite the fact that defendants undoubtedly had such information at their disposal.[3]

### Explanations by Respondents Christian and Dandora

At the show cause hearing on August 29, 2000, the Court heard the testimony of Mr. Christian and Ms. Dandora concerning the events surrounding the filing of the response and the reasons for the discrepancies noted by the Court. Mr. Christian and Ms. Dandora explained that upon re-

---

**2.** As discussed below, the reference in the Alivernini affidavit to American Home Products apparently was the result of a typographical error, but nonetheless was relied upon by the respondents in the response memorandum.

**3.** In addition to the above, during the show cause hearing it came to light that the affidavits in issue themselves contained statements that were untrue. While the affidavit of Eileen Lach stated that she was knowledgeable about the minutes of the annual board of directors meetings of WALCO and that the minutes of the annual board of directors meetings for WALCO are kept in Madison, New Jersey (Affidavit of Eileen Lach, Exh. B. to Response), there has never been a meeting of the board of directors of WALCO, and thus no minutes; board business is conducted by unanimous written consent. (Testimony of Douglas Y. Christian; Affidavit of Richard J. Walsh, at ¶ 7, Exh. A to Pre–Hearing Memorandum of Douglas Y. Christian and Reetu Dandora.) Furthermore, the memorandum assertion that all WALCO checks must be signed in Madison, New Jersey is inaccurate; WALCO does not have a checking account. (Testimony of Douglas Y. Christian.)

ceiving plaintiffs' motion to remand, their firm, Reed Smith, conferred with national counsel to the American Home Products family of companies, Shook, Hardy & Bacon L.L.P. of Kansas City, Missouri ("Shook Hardy"), and in-house counsel for American Home Products. (Testimony of Douglas Y. Christian, Reetu Dandora.) All counsel agreed that there was a good basis to oppose the motion to remand and decided to divide the labor on the response to the motion to remand between Reed Smith and Shook Hardy; Reed Smith would "take the laboring oar" on the response and legal arguments in support thereof, and Shook Hardy would gather affidavits to support the opposition to remand. (Testimony of Douglas Y. Christian, Reetu Dandora.)

Ms. Dandora undertook the drafting of the response and memorandum under the supervision of Mr. Christian. (Testimony of Reetu Dandora.) Because the majority of her practice with Reed Smith involves American Home Products litigation (she is involved in over 400 cases), Ms. Dandora is "very familiar" with the American Home Products family of companies, where they are located, and the relationships among them. (*Id.*) She and her counterpart at Shook Hardy, along with in-house counsel for American Home Products, commenced an investigation into facts that would support the response in opposition to the motion for remand, and apparently agreed on what facts would be included in the affidavits. (*Id.*) Ms. Dandora testified that she believed the investigation had amassed sufficient facts and evidence to support the response and that she never had any doubt that the memorandum and the affidavits in support thereof would conform to one another and to the investigation. (*Id.*)

While Ms. Dandora was drafting the response, Mr. Christian informed her that he would be out of the office on the day the response would be filed and asked to see a draft of the response before he left.

(Testimony of Douglas Y. Christian.) Ms. Dandora gave a draft to Mr. Christian, who reviewed it, provided comments, approved it, and instructed Ms. Dandora to make sure that the affidavits supported the assertions in the memorandum. (*Id.*) On the day the response was to be filed, Ms. Dandora received the signed affidavits, which were prepared by her counterpart at Shook Hardy and delivered to Reed Smith's Philadelphia offices. (Testimony of Reetu Dandora.) Ms. Dandora testified that she reviewed the response motion, memorandum, and affidavits to ensure their consistency and then filed them with the Court. (*Id.*)

Both Mr. Christian and Ms. Dandora testified that they were unaware of any problem with the response until this Court rendered its decision on the motion to remand on August 11, 2000.[4] Both reiterated that they never intended to mislead the Court, and that, while they now acknowledge the shortcomings of the response, neither had any doubt when the response was filed that the factual assertions made on pages 6, 7, and 8 of the response memorandum were in fact true and correct and supported by available evidence.

Mr. Christian and Ms. Dandora provided explanations for some of the problems in the response. First, they testified that the major inconsistency between the response memorandum and the affidavits was caused by a typographical error in one of the affidavits prepared under the supervision of Shook Hardy; the affidavit of John Alivernini stating, "[a]ll financial decisions pertaining to American Home Products Corporation are made in Madison, New Jersey," which was cited for the proposition that WALCO financial decision were made in New Jersey, should have read, "[a]ll financial decisions pertaining to *Wyeth–Ayerst Laboratories Company* are made in Madison, New Jersey." (Testimony of Douglas Y Christian, Reetu Dandora;

---

4. Mr. Christian was notified of the decision while away from the office, and Ms. Dandora received the decision at her office. (Testimony of Douglas Y. Christian, Reetu Dandora.)

Affidavit of Tiffany Westphal, Associate, Shook Hardy & Bacon, L.L.P., Exh. E to Pre–Hearing Memorandum of Douglas Y. Christian and Reetu Dandora) (emphasis added).

Second, Mr. Christian and Ms. Dandora explained that, with the exception of the typographical error, they considered the other factual assertions in the memorandum that did not appear in the affidavits to be "fair argument" based on reasonable inferences that could be drawn from the facts in the affidavits. (*Id.*) However, under questioning from the Court, neither Mr. Christian nor Ms. Dandora could point to any reference in the affidavits to a number of the factual assertions contained in the memorandum. (*Id.*) They confirmed there was no information in the affidavits concerning factual assertions in the memorandum about the "day-to-day activities" of WALCO; where managerial decisions are made "as opposed to" the activities of "lower-level officers" in WALCO's St. Davids, Pennsylvania location "who implement the policies;" where "all corporate records" are located; and whether Duract was distributed, marketed, or sold in Pennsylvania. (*Id.*) It is difficult to see how inferences could be drawn as to such specific and sweeping assertions, because neither those factual statements nor anything close to them were in the affidavits. This Court concludes that these factual assertions were not fair argument from the affidavits.

Third, Mr. Christian and Ms. Dandora acknowledged that their refutation of the plaintiffs' web site evidence that WALCO was headquartered in St. Davids, Pennsylvania was insufficient. (Testimony of Douglas Y. Christian, Reetu Dandora.) Ms. Dandora testified that the web site was in fact the web site of a division of American Home Products called Wyeth–Ayerst Laboratories, an entity distinct from WALCO, and that she had failed to make that clear in the response. (Testimony of Reetu Dandora.)[5]

In a memorandum submitted prior to the show cause hearing, Mr. Christian and Ms. Dandora produced a substantial body of evidence and argument demonstrating that the center of corporate activity and the principal place of business of WALCO is in fact in Madison, New Jersey. (Affidavit of Richard J. Walsh; Affidavit of Robert Maschia; Affidavit of Audrey Ashby, Exhs. A, B, and C to Pre–Hearing Memorandum of Douglas Y. Christian and Reetu Dandora.)[6] On the basis of this new evidence, the Court concurs that there was indeed substantial evidence that WALCO's principal place of business is in New Jersey, and that the contentions in the response memorandum, while not supported by the affidavits submitted with the response, are now largely supported by the evidence.[7]

---

**5.** Ms. Dandora referred in her testimony to occasional confusion in other cases in which plaintiffs have sued American Home Products-related entities containing the names Wyeth–Ayerst. Apparently, there are a number of entities containing the names Wyeth–Ayerst, including Wyeth–Ayerst Laboratories, a division of American Home Products; Wyeth–Ayerst International, Inc.; and Wyeth–Ayerst Research. (Testimony of Reetu Dandora.) However, Ms. Dandora acknowledged that there was no such confusion here, and that it was clear that plaintiffs were suing WALCO. (*Id.*)

**6.** Mr. Christian and Ms. Dandora present this evidence not to re-litigate the issue of remand, but to show that there was in fact substantial, persuasive evidence to support the position they took in the response, despite the evidentiary shortcomings of the response memorandum filed with this Court. (Pre–Hearing Memorandum of Douglas Y. Christian and Reetu Dandora, at 8.)

**7.** I note that had Mr. Christian and Ms. Dandora presented such compelling evidence of WALCO's principal place of business in the manner submitted along with the pre-hearing memorandum on the motion to remand, things would have turned out *quite differently*. Both respondents conceded that all of the "new" evidence existed and was available to them before they filed the problematic response memorandum. (Testimony of Douglas Y. Christian, Reetu Dandora.)

Finally, both Mr. Christian and Ms. Dandora apologized to the Court for what they now recognize to be the shortcomings of the response. (Testimony of Douglas Y. Christian, Reetu Dandora.) Both accepted full responsibility and acknowledged that there were discrepancies between the response memorandum and the affidavits, and that the discrepancies were a serious matter. (*Id.*) However, both testified that the inconsistencies were the result of inadvertence, and that neither had any intention to mislead the Court. (*Id.*)

### Discussion

The Court credits Mr. Christian and Ms. Dandora for their candid and honest testimony under difficult circumstances. The Court accepts the testimony of both Mr. Christian and Ms. Dandora that neither had any intent to mislead the Court. I find no evidence of bad faith here. I am satisfied that the conduct at issue, while willful in fact, was inadvertent in its errors. In other words, respondents genuinely believed that the representations they made in the response were supported by the evidence they provided, and, upon further inquiry, it has become clear that those representations were essentially not false in fact. Therefore, I conclude that sanctions based upon bad faith are not warranted.

However, the Court wishes to underscore what it considers to be the serious lapse in practice and advocacy that took place here. Both Mr. Christian and Ms. Dandora acknowledged that it was their intent in filing the response to persuade this Court not to remand the case. (Testimony of Douglas Y. Christian, Reetu Dandora.) Mr. Christian and Ms. Dandora made arguments based on factual assertions not in the record for the purpose of convincing the Court that there was complete diversity among the parties to the

lawsuit and that the case was therefore properly in federal court. Thus, while there was no intent to mislead the Court, there was willful, purposeful intent to persuade the Court of their clients' position. This effort to persuade the Court was in fact misleading, because Mr. Christian and Ms. Dandora represented to the Court that the factual assertions in the memorandum were supported by the affidavits when they were not. Thus, the Court was misled.

While the testimony of Mr. Christian and Ms. Dandora have assuaged my concern that they acted in bad faith, their explanations do not excuse the sloppiness of their advocacy or their conduct in preparing and presenting the response memorandum and affidavits. Both Mr. Christian and Ms. Dandora testified that they hold themselves to high standards in their practice of law. Mr. Christian said he has observed and been troubled by instances of attorneys misrepresenting the record and making argument without a factual basis. (Testimony of Douglas Y. Christian.) Ms. Dandora testified that she was convinced that what was in the brief was supported by the affidavits. (Testimony of Reetu Dandora.) And yet, both attorneys now acknowledge that the memorandum they filed with this Court contained numerous factual assertions that were not supported by the evidence they presented. (Testimony of Douglas Y. Christian, Reetu Dandora.) And both attorneys have acknowledged that at the time the response was filed, they had at their disposal the facts and supporting evidence necessary to support those factual assertions, but failed to present them to the Court. (*Id.*) Thus, Mr. Christian and Ms. Dandora failed to live up to the standards they set for themselves.[8]

---

8. The Court notes that there were certain factors somewhat beyond the control of Ms. Dandora and/or Mr. Christian that contributed to the problems with the response. The division of labor with national counsel resulted in one law firm preparing the affidavits upon which the memorandum, being prepared by another law firm more than 1,000 miles away, would rely. Such an arrangement was ripe for discrepancies between the memorandum and the affidavits. Also, Mr. Christian's absence at the time the response

This is not a matter of an exacting judge becoming overwrought upon the discovery of a "typo." Nor is this merely a matter of confusion or misunderstanding. This is a case of two lawyers who represented in papers filed with the Court that certain factual assertions were supported by evidence on the record when they in fact were not. Evidentiary clairvoyance is not among the job requirements of even a senior district court judge. If a lawyer is going to make an argument based on facts, he or she must cite to evidence supporting those facts and ensure that the evidence actually provides support for those facts. That did not happen here.

Mr. Christian and Ms. Dandora have acknowledged their errors, accepted responsibility, and apologized to the Court. They are both members in good standing of the Pennsylvania bar without a prior blemish on their records. I am persuaded that the conduct discussed herein was uncharacteristic of the manner in which Mr. Christian and Ms. Dandora practice law. Moreover, I believe Mr. Christian and Ms. Dandora have learned from this episode, and that a repeat of this conduct is highly unlikely. Therefore, for this additional reason, I do not believe sanctions are necessary or appropriate.

*Conclusion*

This nation's adversarial system of justice rests squarely upon the competency and vigilance of counsel. The quality of the justice handed down from the courts is inextricably linked to the quality and accuracy of the work of the advocates who appear before them. Errors and misrepresentations in the course of advocacy, even unintentional ones, do not merely injure clients or lose cases, they weaken the fabric of our justice system and undermine the integrity of the legal profession.

The Court has devoted its attention and energy to this matter not to make an overblown, minor point. The Court has acted to uphold the twin principles that, as officers of the Court, lawyers will be held accountable for the accuracy of the representations they make to the Court and the evidentiary genesis of those representations, while the Court, in turn, must oversee the administration of justice by illuminating transgressions which, if they become acceptable conduct, will indeed harm the public confidence in the courts. Adherence to these principles by counsel and the Court is not merely aspirational, it is mandatory. These principles have been vindicated by these proceedings, which I hope are ended on an instructive note.

was finalized and filed removed an additional check that may have caught the discrepancies. Nonetheless, the failure of all persons who prepared, signed, and reviewed the sec-

ond Alivernini affidavit to notice the critical typographical error contained therein is ultimately inexcusable considering the professional detail required by their work.